# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

HAFFNER'S ADM'R v. CHESAPEAKE AND OHIO RAILWAY CO.

DECEMBER 7, 1898.

Absent, Riely and Cardwell, JJ.

1. RETRIAL DE NOVO—*New Evidence—Different Judgment—Same Evidence—Res Judicata.*—On retrial *de novo*, a party may introduce new evidence and establish an entirely different state of facts from that shown on the former trial, and to conform its judgment to the changed state of facts is no violation of principle in a court even if thereby it sets aside its former decision as inapplicable, and adopts a new one suited to the new phase of the controversy. But where the evidence is substantially identical on the two trials, and the relations of the parties thereto the same, as in the case at bar, the judgment on the first trial is conclusive.

2. RAILROADS—*Over-head Bridges—Negligence—Contributory Negligence.*—It is negligence for a railroad company to operate its road with an over-head bridge only twenty-eight and a half inches above the tops of its cars, but if an employee knows or ought to know of the dangerous character of the bridge, and fails to use ordinary care to protect himself, in consequence of which he is injured, he is guilty of contributory negligence, and cannot recover for the injury.

3. RAILROADS—*Signal for Brakes—Emergency.*—The mere signal to put on brakes when approaching an over-head bridge which is very low does not constitute such an emergency as to render a brakeman irresponsible for his acts.

Error to a judgment of the Circuit Court of James City county and the city of Williamsburg, rendered June 15, 1896, in an action of trespass on the case wherein the plaintiff in error was the plaintiff, and the defendant in error was the defendant.

*Affirmed.*

The opinion states the case.

*N. S. Henley* and *L. L. Lewis,* for the plaintiff in error.

*A. S. Segar, Henry T. Wickham,* and *Henry Taylor, Jr.,* for the defendant in error.

KEITH, P., delivered the opinion of the court.

This is a writ of error to a judgment of the Circuit Court of James City county and the city of Williamsburg, and is the sequel to the case of *C. & O. Rwy Co.* v. *Haffner's Adm'r,* 90 Va. 621.

At the first trial the jury found a verdict for the plaintiff, and the railway company brought the case to this court where it was reversed, and the verdict and judgment set aside, as being contrary to the law and the evidence, the court holding that the contributory negligence of the plaintiff's intestate was the proximate cause of his injury. The case was remanded for a trial *de novo,* and upon that trial the jury found a verdict for the plaintiff, subject to the defendant's demurrer to evidence, and upon that demurrer the Circuit Court entered judgment for the defendant. Thereupon Haffner's administrator obtained a writ of error to this court.

When the case was reversed and remanded upon the former hearing, it was sent back to be tried upon such evidence as might be adduced before the jury, and, in the event of a substantial change in the facts, a new decision as applicable to them would have been required, and the former decision would cease to be the law of the case; for it is clear " that a party on a retrial *de novo* may introduce new evidence, and establish an entirely different state of facts, to conform to which is no violation of principle in a court, even if thereby it does set aside its former decision as inapplicable, and adopt a new one, as suited to the new phase of the controversy. But, even then, the former decision, so far as applicable, will be adhered to."

Wells on Res Adjudicata and Stare Decisis, sec. 619; and *Car-per* v. *Norfolk & W. R. Co.*, 95 Va. 45.

Upon the former trial the court deduced the following facts from the evidence: " That the deceased had been employed by the R. & A. R. R. as brakeman four months before he applied for employment with the plaintiff in error company. Upon application to the plaintiff in error company for employment he was given a free pass over the road from Charlottesville to Newport News, and required to inform himself of his duties, and the character of the road. He was a man of full age, with no defect in his eyesight or hearing. He frequently passed under this bridge by day and by night, safely, in the discharge of his duty, without injury. On the occasion of the accident which caused his death, he was struck on the head, as is stated by a witness who stood on the bridge and says he heard the blow, by the sill or stringer of the bridge on the west side of the bridge, the train going west at the time of the accident; so that he had passed in safety under three sills of the four supporting the bridge. He stooped or lowered his head under it, and raised it just before he got from under it. The character of the injury received from the collision with this sill was never ascertained, because, descending by the stepladder, he fell off the car, and across the track, and his head was cut in twain by the wheels of the car, and his body otherwise badly mutilated. The bridge is shown to have been a dangerous one, being only 28½ inches above the car, which dangerous character was known to the company, and was also known to the said brakeman. While dangerous in character, its danger could, however, be avoided by stooping low enough in passing under it, as is shown by the number of times he passed under it, and the number of times others pass and repass without injury. The train in question was halting at the station to take the siding, to allow a meeting train, presently due, to have the main track. It is alleged that there was a call for brakes here as the station was reached. The

evidence is conflicting on this point, it being otherwise testified to that the long whistle sounded was simply a blow for the station; but we must consider this case, as other cases upon a demurrer to the evidence, under the well-known rule of this court prescribed by statute."

Every fact here stated and relied upon by the court as controlling its decision is established by the evidence in the record before us, which is substantially identical with that considered by the court upon the former hearing, except that the evidence upon this trial is to the effect that the deceased came to his death by a collision with a stringer on the eastern side of the bridge, instead of that upon the west side of the bridge, the train at the time moving from the East to the West. This difference we do not think material to the decision. The decedent was held to have been guilty of negligence upon the former trial, because, having bowed his head and passed in safety from the eastern edge of the bridge under three sills, he raised his head, and was struck by the fourth sill. In thus raising his head he was considered as being guilty of contributory negligence, and himself the author of the injury he sustained; and it was no less negligent upon his part to fail to lower his head upon approaching the bridge, resulting, as the evidence now shows, in death from a collision with the first or eastern sill.

It is negligence for a railroad company to operate its road with such a bridge, but, "while dangerous in character its danger could be avoided by stooping low enough in passing under it, as is shown by the number of times he (plaintiff's intestate) passed under it, and the number of times others passed and repassed without injury." *C. & O. Rwy. Co.* v. *Haffner's Adm'r,* 90 Va. 622.

The evidence as to the age, experience, knowledge, and means of knowledge of plaintiff in error's intestate, is in this record just what it was when the case was before this court upon a former occasion. The employment blank was then in the record, and was considered along with other facts in the

case; and if the case were now before us for the first time, and if that employment blank contained the only information imparted to the employees of the railway company as to the dangerous character of some of its bridges, we should be strongly inclined to hold it to be misleading in the particular insisted upon by counsel for plaintiff in error; for the declaration that it was unsafe to pass under certain bridges while " standing on a car " might reasonably induce the belief that it was not dangerous to pass under the bridges in any other position.; but the effect of that paper was considered by this court along with other facts in the record, and it contains by no means the only or most important sources and opportunities for information open to the employees of the company.

It is claimed that the evidence shows that the plaintiff's intestate was killed while applying the brakes in obedience to a signal to that effect given by the engineer, in order to stop the train and place it on a side track a short distance in advance, so as to leave the main line open for a passenger train due within a few minutes, and that, being required to act upon this sudden emergency, want of ordinary circumspection and care upon his part is to be excused.

In the first place, we do not consider that the circumstances set out in this record prove the existence of an " emergency " in the sense in which that term is sought to be employed. There is nothing in the customary signal to a brakeman to put brakes upon his train which should so disturb his equanimity as to render him irresponsible for his acts.

In the second place, the evidence upon this point now before us is just what it was when the case was formerly heard by this court. The very point was considered, and the evidence as to whether the whistle sounded the signal for brakes, or to announce the approach to a station, was held to be conflicting, but that upon a demurrer to evidence it was to be considered most favorably to the demurree, and was therefore to be taken as establishing a signal for the application of brakes, but it

Opinion.

was not held to constitute an "emergency" which would relieve the decedent from the consequences of his own negligence.

We conclude from the evidence that the bridge was a dangerous one; that its danger was known, or should have been known, to the intestate; that the accident could have been avoided by ordinary care upon his part, and that in failing to lower his head upon reaching the bridge he was guilty of such contributory negligence as precludes the recovery of damages by his administrator for his death.

The judgment of the Circuit Court is affirmed.

*Affirmed.*