# Staunton.

Chesapeake and Ohio Railway Co. v. Rowsey's Admr.

September 15, 1908.

1. Pleading—*Sufficiency of Declaration—Particulars of Personal Injury—Railroads.*—In an action against a railroad company to recover damages for the death of an employee caused by being struck by an overhead bridge which was dangerously low, a declaration, charging that the defendant constructed and maintained the bridge so low as to be dangerous and thereby imperil the lives of employees required to pass under it, is sufficient to give the defendant notice of the cause of action which it was required to meet.

2. Pleading—*Demurrer—Grounds in Writing—Other Grounds.*—In civil cases where grounds of demurrer have been stated in writing, no other grounds will be considered than those so stated. This is regulated by section 3271 of the Code.

3 Railroads—*Overhead Structures—Danger Signals—Code, Sec. 1284-d.* Section 1294-d (36), Code, 1904, which requires railroads, whose tracks pass under any bridge, tunnel or structure too low to admit of the passage of its cars with employees standing at their posts of duty, to erect warning signals at proper distances from such bridge, tunnel, or structure, was not intended to diminish the liability of railroads but to increase it. Railroad companies which do not erect the signals required are deprived of all defense and made erect the signals required are deprived of all defense and made liable for whatever injury results from their conduct, but those who do erect them are not thereby rendered immune from liability resulting from their negligence in having such low bridge, tunnel, or structure.

4. Trial—*Argument of Counsel—Latitude.*—Matters arising in the conduct of a trial are largely in the discretion and under the control of the trial judge. It is not error for counsel to read to the jury the instructions of the court which embody provisions of the Constitution, and, in argument, to refer to the Constitutional convention, and the change which it made in the law.

5. Railroads—*Low Bridges—Knowledge—Assumption of Risk.*—It is negligence for a railroad company to construct, maintain and oper-

ate its road under a bridge which is so low that its employees cannot perform their duties with reasonable safety, while in the exercise of ordinary care, but a servant who has full knowledge of the location and character of the bridge assumes the risk. The doctrine of the assumption of risk of unsafe appliances and structures, however, has been abolished in this State as to servants of a railroad company.

6. RAILROADS—*Defective Structures—Knowledge of Servant—Assumption of Risk Abolished—Contributory Negligence.*—Under the Constitution and statute of this State, knowledge of a servant of a railroad company of the unsafe and dangerous character of an overhead bridge is no defense to an action for an injury caused thereby, if at the time of the injury the servant was in the exercise of such care as a man of ordinary prudence would exercise; and whether or not he was exercising such care is usually a question for the jury under proper instructions from the court. The doctrine of the assumption of risk of unsafe appliances or structures has been abrogated in this State as to servants of railroad companies, but not the doctrine of contributory negligence.

7. RAILROADS—*Low Bridge—Knowledge of Servant—Presumption as to Negligence—Contributory Negligence—Burden of Proof.*—In an action to recover for the death of a servant of a railroad company killed by a dangerously low overhead bridge, where the evidence as to the killing is circumstantial, the law presumes that the deceased exercised due and proper care for his own safety, and the burden of proving his contributory negligence is on the defendant unless it appears from the plaintiff's evidence. The mere fact that deceased knew of the dangerous character of the bridge is not of itself sufficient to support the defense of contributory negligence, but such knowledge, if it existed, is rightly to be considered by the jury along with all the evidence in the case in determining whether or not the deceased used due and proper care in the situation in which he was placed when the injury occurred.

8. INSTRUCTIONS—*Passing on Facts.*—It is not error to refuse an instruction which takes from the consideration of the jury the facts upon which the plaintiff relies to support his case when they are pertinent to the issue joined.

9. RAILROADS—*Low Bridge—Verdict—Evidence to Support—Case at Bar.* Under the evidence in the case at bar the jury were justified in finding that the plaintiff's intestate, who was a brakeman on a railroad, came to his death by his head striking a low overhead bridge, of the location and dangerous character of which he had knowledge, and as his knowledge of the location and dangerous character of the bridge no longer bars his right of recovery for an injury sustained

thereby, and as there is no evidence of any act of negligence on his part which can be considered along with his knowledge of the defect in order to impute to him contributory negligence, the verdict of the jury cannot be set aside.

Error to a judgment of the Circuit Court of Albemarle county in an action of trespass on the case. Judgment for the plaintiff. Defendant assigns error.

*Affirmed.*

The following instructions were given by the court:

"(A) The court instructs the jury, that knowledge by any railroad employee injured of the defective or unsafe character or condition of any appliances or structures shall be no defense to an action for injury caused thereby; and, if the jury believe from the evidence that G. W. Rowsey was killed by reason of the fact that the condition or character of the defendant company's appliances or structures was not reasonably safe, viz., that the bridge in question was situated dangerously near the top of the tender and cars, and was thereby rendered unreasonably unsafe to the said Rowsey in the performance of his duties as brakeman, and if they believe that the deceased Rowsey was attending to his accustomed duties using such care as a man of ordinary prudence would use under the circumstances therein at the time he received the injury which caused his death, they must find for the plaintiff, notwithstanding they may believe from the evidence that he had knowledge of said unsafe condition or character of the bridge.

"(B) The court instructs the jury, that the law presumes that G. W. Rowsey exercised due and proper care at the time he was injured, and the burden of proving his contributory negligence is upon the defendant, unless such contributory negligence appears from the plaintiff's evidence; and, if the jury believe from the evidence that the bridge was dangerous and unsafe as stated in instruction A, and that the said G. W. Row-

sey knew this fact, the defense of contributory negligence cannot rest alone upon such knowledge, but such knowledge, if it existed, is rightly to be considered by the jury along with all the evidence in the case in determining whether the said Rowsey used due and proper care required in the situation in which he was placed when the injury occurred."

Instruction No. 2. "The court instructs the jury, that the burden of proof is upon the plaintiff to show by a preponderance of the evidence the negligence of the defendant company; and, if it appears from the evidence that the injury complained of may as well have happened from the negligence of G. W. Rowsey himself as from that of the company, they must find for the defendant."

Instruction No. 3. "The court instructs the jury, that if they believe from the evidence the negligence of G. W. Rowsey himself contributed in any degree to the proximate cause of the injury complained of, they must find for the defendant, even though they should also believe the defendant company was negligent."

Instruction No. 5. "The court instructs the jury, that there can be no recovery in this case upon the allegations contained in the second and third counts of the declaration."

Instruction No. 6. "The court instructs the jury, that there can be no recovery in this case if it is not proven to the satisfaction of the jury by a preponderance of the evidence that the said G. W. Rowsey went upon the top of the train in the performance of his duty; and, in the absence of affirmative preponderating proof of that fact, they must find for the defendant."

Instruction No. 7. "The court instructs the jury, that unless they believe from the evidence that the defendant company's engineer gave such a signal for the application of brakes upon the train upon which said G. W. Rowsey was a brakeman, as would necessitate the said G. W. Rowsey going upon the top of the cars in the performance of his duty, then there can be no

recovery in this action; and, if the jury shall further believe from the evidence that a signal for the application of brakes is one sharp blast of the whistle, and that the engineer in this instance sounded several sharp blasts of the whistle in succession, and that a succession of sharp blasts of the whistle is not a signal for the application of brakes, then the said G. W. Rowsey was not required thereby, and it was not his duty, to go upon the top of the box cars for the purpose of applying brakes in the performance of his duty."

*D. H. & Walter Leake,* for plaintiff in error.

*F. W. King, W. E. Fowler* and *Daniel Harmon,* for the defendant in error.

Keith, P., delivered the opinion of the court.

This is an action brought by Rowsey's administrator against the Chesapeake and Ohio Railway Company, to recover damages for the death of his intestate, alleged to have been caused by the negligent act of the defendant company.

Plaintiff's intestate was a brakeman upon the Chesapeake and Ohio Railway, and at a point upon its line some distance west of Charlottesville, near Ivy station, the public highway crosses the railroad upon a bridge. Plaintiff's intestate was struck on the head by this bridge, and died in a short time thereafter; and the negligence alleged is that the bridge, which it was the duty of the defendant company to keep in a reasonably safe condition, was so low as to be dangerous.

The plaintiff recovered a judgment against the defendant, to which a writ of error was awarded, and the first error assigned is to the action of the court in overruling the demurrer to the declaration and the four counts thereof.

It is unnecessary to pass upon the second and third counts, as the jury were directed not to consider them. The demurrer

to the first and fourth counts is because they do not state with sufficient precision wherein the negligence of the defendant company with reference to the construction and maintenance of this overhead bridge consisted.

The averment of the declaration upon this point is that the defendant, "Not regarding its duty in this behalf, so carelessly and negligently conducted itself that it failed and omitted to use proper care to provide a reasonably safe place for the said G. W. Rowsey to discharge his duties as aforesaid, and failed and omitted to use due and proper care in the construction and maintenance of its railway and the structures connected therewith, and carelessly and negligently procured, caused and permitted the space between the tender and cars of said train and the bottom of the said overhead bridge to be and remain unreasonably dangerous and low, so that the said bridge was in dangerous proximity to the tops of the said cars and tender, to-wit: * * * feet therefrom, so as to unreasonably imperil the life of the said G. W. Rowsey * * * ."

We are of opinion that this was sufficient to give the defendant notice of the cause of action which it was required to meet. Merely to have said, that the overhead bridge was dangerous might have been amenable to the objection insisted upon by counsel for plaintiff in error; but to say, that it was dangerous because it was too low, points out the particular in which the defendant company had been negligent—that it had constructed and maintained the bridge so low as to be dangerous and thereby imperil the lives of those of its employees who were required to pass under it.

Another objection urged here to the declaration is, that it does not comply with section 1294-d (36) of the Code, which provides as follows: "Where any railroad track passes under any bridge, tunnel or structure, not sufficiently high to admit of the safe passage of cars upon such railroad tracks, with the servants and employees standing at their posts of duty on said cars, the person or persons, firm or corporation, operating said

railroad and running its trains thereon, shall erect and main-tain, at proper distances on each side of such bridge, tunnel or structure, warning signals of approved design and in general use, to warn the servants or employees, or those operating such railroads, of the approach of said bridge, and the failure to erect and maintain such danger signals shall make those operat-ing such railroads liable in damages for the death or injury of any employee or servant resulting from the insufficient height of such bridge, and no contract, expressed or implied, and no plea of, or defense based upon, the contributory negligence of the servant or employee shall relieve those operating such rail-road of the liability imposed hereby."

We might dispose of this ground of demurrer by a reference to section 3271 of the Code, which provides, that "in civil cases the court on motion of any party thereto shall, or on its own motion may, require the grounds of demurrer to be stated specifically in the demurrer, and no grounds shall be consid-ered other than those so stated." There is no reference to sec-tion 1249-d (36) in the grounds of demurrer assigned; but we will consider the question now as it arises in another aspect of the case.

The section mentioned was not intended to diminish the liability of railroads, but to increase it. If the railroad whose tracks pass under any bridge, tunnel or structure not sufficiently high to admit of the safe passage of cars upon the tracks with the servants and employees at their posts of duty on said cars, fails to maintain at proper distances on each side of said tunnel or structure warning signals of approved design and in general use, those operating such railroads are made liable in damages for the death or injury of any employee or servant resulting from the insufficient height of such bridge, and no contract, express or implied, and no plea of, or defense based upon, the contributory negligence of such servant shall relieve such rail-road from liability. Railroads having the structures denounced by this statute, who do not erect the danger signals for which

it provides, are deprived of all defense and made liable for whatever injury may have resulted from their conduct. But where the warning signals are placed, we do not understand that the railroad company is thereby made immune from dangers resulting from its negligent act in having a bridge or other structure not sufficiently high to admit of the safe passage of its cars with its servants and employees standing at their posts of duty on said cars.

We find no error in the ruling of the court upon the demurrer to the declaration.

The next assignment of error was taken to the ruling of the court upon the motion of the defendant company to quash the *subpoena duces tecum* sued out by the plaintiff, requiring the defendant to produce certain books and papers. This assignment was waived in open court and need not be considered.

The third assignment of error is that the trial court overruled the motion of plaintiff in error to restrain counsel for defendant in error from making certain statements to the jury highly prejudicial to the railroad company.

It appears that counsel for defendant in error, while making the closing argument before the jury, said in substance as follows: "That before the adoption of the new Constitution in this State there could be no recovery in cases of this character; that knowledge by an employee of the unsafe character of an overhead bridge had been held to be one of the assumed risks of the employment; that this rule of law had, however, been changed by the new Constitution; that it took the constitutional convention of this State to make a change in the law which prevented a recovery in this class of cases; and that constitutional provision was as follows: (Here counsel read the following constitutional provision, as embodied in instruction 'A' given by the court) : 'Knowledge by any such railroad employee injured, of the defective or unsafe character or condition of any appliances or structures, shall be no defense to an action for injury caused thereby.' "

We have held that matters arising in the conduct of a trial are largely in the discretion of and to be controlled by the trial judge. We have held, also, that it is the duty of the trial court to give all proper instructions to the jury for their guidance, and that the trial judge is justified in refusing to permit counsel to read law books to the jury, as it tends rather to confuse than to inform them. This line of decision we approve; but we are of opinion that what occurred in this case does not run contrary to the rule which they establish. What counsel read to the jury, as appears from the exception which brings this matter before us, was embodied in an instruction given by the court. It was certainly proper for counsel to read the instruction to the jury, and urge them by all proper arguments to obey the instruction. It does not appear that counsel read from any book, but that he referred *arguendo* to the constitutional convention and the changes which it had made in the law. In this we do not find reversible error.

The next assignment of error is to the giving of two instructions asked for by the plaintiff, marked "A" and "B," and declining to give instructions 1, 4, and 8, asked for by the defendant in the court below.

Section 1294-k of the Code provides, that "knowledge by any employee injured of the defective or unsafe character or condition of any machinery, ways, appliances, or structures of such corporation shall not of itself be a bar to recovery for any injury or death caused thereby."

Instruction "A," in its first clause, is copied from the statute. It announces the rule which is to control the jury when they come to consider the case before them, and they are told, that although the bridge in question was situated dangerously near the top of the tender and cars, and was thereby rendered unreasonably unsafe to the said Rowsey in the performance of his duties as brakeman, if they believe that Rowsey was attending to his accustomed duties with ordinary care and prudence, they must find for the plaintiff, notwithstanding they might believe

from the evidence that he has knowledge of the unsafe character
or condition of the bridge.

Now, it is negligence for a railroad company to construct,
maintain, and operate a road under a bridge which is so low
that its employees cannot perform their duties with reasonable
safety while in the exercise of ordinary care. This proposition
was stated by this court in *Haffner* v. *C. & O. Ry. Co.*, 96 Va.,
528, 31 S. E. 899, where a brakeman was killed by striking a
bridge 28½ inches above the cars, and the court said: "It is
negligence for a railroad company to operate its road with such
a bridge, but while dangerous in character, its danger could be
avoided." And, under the circumstances of that case, we held
that the plaintiff could not recover.

In *N. & W. Ry. Co.* v. *Marpole*, 97 Va. 595, 34 S. E. 462,
the court said: "The court's instruction No. 2 from its begin-
ning down to and including the word 'recover' is substantially
the same as defendant's instruction No. 1, refused, and pro-
pounded the settled law that, although it is negligence for a
railway company to operate its road with an overhead bridge
too low for its employees, whose duties are upon the tops of
the cars, to pass when standing on the cars in the discharge of
their duties, yet if an employee knows or ought to know the
dangerous condition of the bridge, and fails to use ordinary
care to protect himself in consequence of which he is injured,
he is guilty of contributory negligence and cannot recover for
the injury."

It will be observed that the instruction under consideration
has reference only to the knowledge by an employee of the un-
safe character of the bridge. It excludes the idea that there
was any other circumstance which might tend to convict the
plaintiff of contributory negligence and thereby defeat his
recovery, because the instruction is predicated upon the theory
and so states, that the employee was in the exercise of such care
as a man of ordinary prudence would use at the time he sus-
tained the injury which caused his death. The object, and the

sole object, of the instruction was to exclude from the consideration of the jury the doctrine of assumed risks.

It is true, as this court has held, that knowledge of the unsafe character of a structure, while alone not sufficient to establish contributory negligence, is a circumstance to be considered by the jury along with other facts tending to establish that defense. Thus, in *N. & W. Ry. Co.* v. *Cheatwood,* 103 Va. 356, 49 S. E. 489, the court, discussing the effect of the change in the law which is embodied in section 1294-k, above referred to, passed in conformity with the constitutional provision upon the subject, that "while the right to make the defense of contributory negligence is not abrogated by the constitutional provision and the statute under consideration, the defense cannot rest alone upon the knowledge of an injured employee of the defective or unsafe character or condition of any machinery, ways, appliances or structures which may have been instrumental in causing the injury for which he sues, but such knowledge is rightly to be considered by the jury along with all the evidence in the case in determining whether the employee injured used that caution required in the situation he was placed in when the injury was received. Before the adoption of the constitutional provision and the statute, knowledge by the employee of the defective or unsafe character or condition of any machinery, ways or appliances or structures which were instrumental in causing the injury sued for, upon the doctrine of assumed risk based upon knowledge, actual or imputed, arising from the contract between the parties, the law implied that the servant assumed the risk of all danger of which he had knowledge, or by the use of proper diligence would have had knowledge, and therefore did not permit a recovery for an injury arising from defective machinery, etc., where the defect was known to him."

Instruction "B" deals with contributory negligence, and tells the jury that the law presumes that Rowsey was in the exercise of due care at the time he was injured, and that the burden of proving his contributory negligence was upon the defendant,

unless such contributory negligence appears from the plaintiff's evidence; and if the jury believe that the bridge was dangerous and unsafe, as stated in instruction "A," and that Rowsey knew this fact, the defense of contributory negligence cannot rest alone upon such knowledge, but such knowledge, if it existed, is rightly to be considered by the jury along with all the evidence in the case in determining whether Rowsey used due and proper care in the situation in which he was placed when the injury occurred.

Much of what we have said with reference to instruction "A" applies with equal force to instruction "B," and the citation of the opinion of the court in *Cheatwood's Case* seems to be conclusive.

We are of opinion that there was no error in granting the two instructions asked for by defendant in error.

Plaintiff in error asked for eight instructions. The court gave all except Nos. 1, 4 and 8.

Instruction No. 1 tells the jury that "in this case the defendant company was not negligent in having a bridge over its railway too low to permit the safe passage of a person standing upon the top of one of its cars."

Even in those jurisdictions where the practice is for the court to direct a verdict, we apprehend that, as applied to the facts of this case, such an instruction could not be approved. It takes from the consideration of the jury the only fact of negligence upon which the defendant in error relied; and that there was evidence tending to support the case stated in the declaration will appear when we come to consider the motion to set aside the verdict as being contrary to the evidence.

Instruction 4 seems to be in the teeth of the constitutional provision and of the statute, and of the cases considered in connection with instruction "A" asked for by defendant in error. It tells the jury, that if Rowsey knew, or ought to have known, that he could not pass in safety under the overhead bridge standing upon the box car or tender, but that, notwithstanding

such knowledge, he subjected himself to the danger, he was guilty of such contributory negligence as will bar a recovery. The statute says, that knowledge by an employee of the defective or unsafe character or condition of any appliance or structure shall not, of itself, be a bar to recovery for any injury or death caused thereby.

Instruction No. 8 presents, in substance, the same proposition. It states, that, although the engineer gave a signal for the application of brakes before reaching Ivy station, that fact did not relieve Rowsey from the duty incumbent upon him to exercise ordinary care and prudence for his own safety; and if they further believe from the evidence that he knew, or ought to have known, of the proximity of the bridge and its dangerous character, and notwithstanding such knowledge, went on top of the train just as he was approaching the bridge, he was guilty of contributory negligence.

We are of opinion that there was no error in the ruling of the court upon the instructions.

The remaining assignment of error is that the court overruled the motion of the defendant to set aside the verdict of the jury on the ground of misdirection, and because it was contrary to the law and the evidence.

G. W. Rowsey was a brakeman in the service of the plaintiff in error. When he made application for employment with the railroad company, he signed a paper in which the following question, among others, was asked and answered:

"Do you know that bridges, including highway bridges and tunnels, on this line are too low to clear a man standing on a box car?" A. "Yes."

He went over the road with Turner, a freight conductor, in order that he might acquaint himself with the road and be instructed as to his duties as brakeman. A witness for the company says that he made at least three trips—"They have always made three or four, or as many as the conductor thought necessary. It was left with the conductor to say

whether he was competent to fill the position of brakeman." In this case, it seems that Rowsey made three trips back and forth—that is to say, six trips in all—and he was then considered competent to discharge the duties of brakeman and was employed as such. His application for employment is dated August 25, 1905, and his employment was from that date. The injury from which he died was received on the 24th of September, 1905. On that day he was acting as brakeman upon a freight train, moving in an easterly direction and approaching Ivy, a station upon the road some miles west of Charlottesville. As the train approached Ivy, Rowsey was seated upon "the fireman's seat box." The engineer, as they approached the bridge over the railroad, blew two or three short blasts of his whistle. One short blast is a signal for applying brakes; a succession of short blasts is the signal of danger, and indicates that there is some obstruction upon the track; but the signal for down brakes may be repeated, and often is repeated, the interval between the signals being so spaced, however, as to distinguish the repetition of the call for down brakes from the quick succession of short blasts above referred to. When the signal was given by the engineer, Rowsey got up and started back over the tender to apply brakes. When next seen after passing Ivy there was blood upon his face. He was taken to Charlottesville, turned over to the hospital, and died in a short time. The cause of his death was a contused wound upon the back of his head, which seems to have fractured his skull, as appears from an examination of his body after death. Upon the sill of the bridge, to the west, there appeared a stain or smear, such as might have been made by the violent impact of the brakeman's head upon it.

The habit is to fill the tender with coal at Staunton, and upon an ordinary run the coal will have been so far removed from the tender by the time the train reaches Ivy as that it will slope from almost nothing at the front of the tender to the top of the tender at the rear.

The bridge over the railroad is something like 30 inches above the top of a freight car, and at the usual and proper distance from the bridge, as it approached from the west, is an appliance consisting of cords attached to a beam across the track, intended to warn employees of the approach to a bridge. There is no evidence of any negligent act upon the part of the defendant in error, except his knowledge of the condition of the road, as appears from his statement in his application for employment and such information as he may have acquired in passing over the road while being instructed as to his duties as brakeman. This could not amount to more than bare knowledge of the existence of the overhead bridge.

From these facts, we are of opinion that the jury were justified in concluding that the injury from which Rowsey died was caused by his head striking the overhead bridge. There is no other rational way of accounting for the injury. It is not a case in which we should apply the doctrine known as that of *res ipsa loquitur,* but one in which, taking into consideration all of the circumstances surrounding the occurrence, we find that the conclusion reached by the jury is supported by the evidence.

As was said in *Haffner* v. *C. & O. Ry. Co.,* and in *N. & W. Ry. Co.* v. *Marpole,* already cited, it is negligence for a railroad company to operate its road with an overhead bridge too low for its employees to pass when standing on the cars in the discharge of their duties. Its negligence, as we have seen, was the proximate cause of the injury; and as knowledge by an employee of the unsafe character or conditions of this structure no longer bars his recovery for an injury sustained by reason thereof, and as there is no evidence of any act of negligence on the part of the employee which can be considered along with his knowledge of the defect in order to impute to him contributory negligence, the judgment complained of must be affirmed.

*Affirmed.*