CRITE

*v.*

THE COMMONWEALTH.

(*Supreme Court of Appeals of Virginia, September, 1881.*)

[Virginia Law Journal, 1881, p. 568.]

Criminal Law—Murder—Evidence at Coroner's Inquest—Case at Bar.

On a trial for murder, the evidence of a witness taken down at the coroner's inquest, but who was not recognized, and who has since removed beyond the jurisdiction of the court, and whose presence cannot therefore, be obtained at the trial, although efforts were made by the prisoner for that purpose, cannot be read. *Quære:* Could it be read, if the witness had died?

Same—Same—Evidence—Self-Serving Declarations—Admissibility of—Case at Bar.

Self-serving declarations made by the prisoner to another person in the absence of the person slain on the night of the murder, but before it was committed, a mile and a quarter from the place of the killing, are inadmissible.

Same—Same—Res Gestæ.*

Where an act of the prisoner has been given in evidence, any declarations made by him at the time of the act, which might tend to explain its nature, or the motives of the prisoner in reference to the same, are admissible as parts of the *res gestæ*.

This was a writ of error to a judgment rendered by the judge of the circuit court of Grayson county, refusing a writ of error, to a judgment rendered by the county court

---

*See monographic note on ''Res Gestæ'' appended to Jordan *v.* Com., 25 Gratt. 925 (Va. Rep. Anno.).

of said county, sentencing Henry Crite to be hung for the murder of Gabriel Gwyn on the night of January 5, 1880.

It seems that the prisoner had married the sister of the deceased, and was living with his wife, her sister Maria Gwyn, and an imbecile brother, in Grayson county, Virginia, whilst the deceased lived in North Carolina; that there were some improper relations alleged to be existing between the prisoner and his sister-in-law, Maria, and that deceased and his brother, Robert Gwyn, came to prisoner's to take Maria and the imbecile brother away from prisoner's, to which prisoner objected, and about which a quarrel ensued, but was stopped before bedtime. The murder of Gabriel seems to have been committed by the prisoner without further explanation, with an axe or knife, and rock, with which deceased's throat was cut, and two large holes cut in his head, and Robert also was badly beaten, whilst they were in bed at the prisoner's house the same night after the quarrel in the evening. Deceased died from the effect of his wounds on 8th of the January, 1880. The nature and extent of the wounds of Robert Gwyn are not stated in the record. Four errors are assigned in the prisoner's petition.

The first is sufficiently stated by Judge Anderson in his opinion, and therefore need not be stated here again.

The second was to the refusal of the court to allow William Roberts, a witness for the defence, to answer two questions propounded by prisoner's counsel, as follows: After the commonwealth had offered evidence tending to prove the murder by the prisoner, Roberts having proved that prisoner came to his house a mile and a quarter from prisoner's after dark, the night of the homicide, but before it was committed, and asked him some questions, which are not given in the record. He was asked: "When the prisoner came to your house on the 5th of January last, did he, or not, tell you that two men had come to his house from

North Carolina; that they had threatened his life, and that he was in fear of bodily harm, and ask you to go over to his house with him?'' But the court refused to allow the witness to answer the same, and then he was asked by counsel for prisoner: ''Did you give him any advice on that occasion; if so, what did you say to him?'' But the court refused to allow the question to be asked, to which prisoner excepted.

The third assignment of error was this: After the commonwealth had introduced evidence tending to prove the murder by the prisoner, and had introduced a witness, Price Robinson, who proved that on the night of the homicide the prisoner came to his house about 8 o'clock, and exhibited a knife, and whetted the same on his boot. Upon cross-examination the witness proved that prisoner came to his house to get witness to go home with him, which witness declined to do. Whereupon a witness was asked by prisoner's counsel: ''When the prisoner came to your house, did he not say to you, that two men had come to his house that evening from North Carolina, and threatened his life, and that he wanted you to go home with him to protect him?'' Which the court refused to allow to be answered and to which the prisoner excepted.

The fourth assignment was to the refusal of the court to set the verdict aside and grant a new trial, on the ground that the verdict was contrary to the law and evidence, to which prisoner excepted.

*William Terry*, for the prisoner.

*Attorney General*, for the commonwealth.

ANDERSON, J., delivered the opinion of the court.

This is a prosecution of the plaintiff in error, by the commonwealth for the murder of Gabriel Gwyn, and comes

here upon a writ of error to the order of the judge of the
circuit court of the county of Grayson, refusing a writ of
error and supersedeas to the judgment of the county court
of said county, by which the plaintiff in error alleges he is
aggrieved.    Upon the trial the jury found a verdict of
guilty of murder in the first degree, and the prisoner was
sentenced to be hung.

Four errors are assigned by the prisoner—the plaintiff in
error, as grounds for reversing the judgment and sentence
of the county court, and awarding him a new trial.

The first is, in refusing to allow the testimony of Maria
Gwyn, taken before the coroner, to be read upon the trial.
Maria Gwyn had removed, after her testimony had been
taken by the coroner, from the state of Virginia, where the
homicide was committed, and was beyond the process and
jurisdiction of the court.    She had not been recognized by
the coroner to appear as a witness to testify on the trial, and
though it appears that efforts were made by the prisoner
through his counsel to procure her voluntary attendance,
she was not present at the trial, and the prisoner, by his
counsel, offered to read her testimony, as taken by the coro-
ner, to the jury ; which was objected to by the common-
wealth's counsel, and was not admitted by the court.    To
which ruling of the court, the prisoner by his counsel ex-
cepted.

It is said by an eminent author (Taylor on Evidence, 1
vol., § 472) that "no case need be cited to establish what is
admitted on all hands, that if the witness be proved to be
dead, secondary evidence of his statement on oath in a for-
mer trial between the same parties, will be received as of
course." And that the ground of admitting secondary evi-
dence in civil proceedings seems equally clear, when it is
proved that the witness is actually residing in some place
beyond the jurisdiction of the court, § 473.    But the same

writer says, § 474, in criminal proceedings, a similar lati-
tude is not allowable at common law, and the deposition of a
witness, whether taken before a magistrate or a coroner,
will not be rendered admissible, on mere proof that the wit-
ness himself cannot be found after diligent search.   Neither
will it be received, upon satisfactory proof, that the witness
being a foreigner, had, since the prisoner was committed for
trial, returned to his own country, and was at the time of
the trial resident abroad.   Also he says, this kind of evi-
dence has been rejected in America, both where the witness
could not be found within the jurisdiction, but was reported
to have gone to an adjoining state, and where he was proved
to have left the state, after being summoned to attend the
trial.   And he cites Wilbur v. Selden, 6 Cowen 162, and
Finn's case, 5 Rand. 701.

If a witness who testified in a civil action has since died,
evidence of what he testified is admissible in a subsequent
trial of the same case, is a rule which universally prevails.
And if he be still living, but has removed from the country,
and is beyond the jurisdiction of the court, the current of
modern authorities hold that such evidence is admissible in
a civil action.

Whether, if a witness be dead, his testimony on a former
trial would be admissible in criminal proceeding, is a ques-
tion which does not arise in this case, and upon which we
express no opinion.   Some of the American states hold, that
if the witness be living, and is beyond the jurisdiction of the
court, his testimony on a former trial, in a criminal proceed-
ing may be received.   But a different rule has prevailed in
this state.

In Finn's case, 5 Rand. 701, the question was decided
by the general court, as far back as the year 1827 ; and it was
held that in a criminal prosecution, evidence of what was
testified by a witness before the called court, was not admis-

sible on the trial, upon the ground of the absence of the witness, and his removal beyond the jurisdiction of the court. It is true that the general court also held, that evidence of what he testified, was not admissible upon another ground which had been urged by the commonwealth as ground for its admission.   The question as to the admissibility of the evidence, upon the ground that the witness had removed from the commonwealth, and was beyond the jurisdiction of the court, ,was treated as a question raised by the bill of exceptions, and one of graver and more important character than the other.   The question was directly raised by the bill of exceptions, necessarily to be decided by the appellate court, in the affirmance or reversal of the judgment of the court below.

Twenty-six years afterwards the same question was raised in Brogy's case, and decided by this court (10 Gratt. 722, 732), and the decision in Finn's case was reviewed and re-affirmed.   Judge Allen, in whose opinion, on this point, all the judges concurred, remarked that "this decision has never been controverted in Virginia.   The whole criminal code has since undergone a revision, but the rule in Finn's case has been acquiesced in, both by the courts and the legislature.   I do not think it necessary, therefore (he says), to go into the enquiry whether the rule was originally founded on proper principles or not. The rule has been established and recognized, and, I think, should be adhered to."   Twenty-eight years have elapsed since that decision was made, and more than a half century since the decision which it reiterated.   In the meantime, our criminal law has undergone another revision, and the rule established by those cases has been acquiesced in. We feel that it would be a work of supererogation in us, to inquire into the correctness of the principles upon which that rule was originally founded.   If any change is made, it should be by legislation, and not by judicial decision.

If it were an original question, we think there would be great objection to the admission of testimony which had been taken by the coroner, under circumstances which do not give assurance that it is a full and accurate disclosure of the facts known to the witness, and as they would have been disclosed by her, if she had been examinèd by the counsel for the commonwealth and for the prisoner, before the court, and in the presence of the prisoner, and her testimony had been subjected to the test of cross-examination. It is probable that the effect of her testimony might have been very different. We doubt that such testimony would tend to promote the ends of justice. We think the objection to its admission, is far greater than the testimony of a witness taken at the called court, or at a former trial, and in the presence of the prisoner and his counsel, and the counsel of the commonwealth, by whom the witness had been examined and cross-examined. If testimony of this character was admissible for the prisoner, it would be admissible for the commonwealth, and we think it would be an unsafe precedent to establish.

For the foregoing reasons, our conclusion is that the first assignment of error is not tenable.

The second assignment of error is the refusal of the court to allow the witness, William Roberts, to answer the questions propounded to him as set out in bill of exceptions No. 3. What the answer of Roberts would have been does not appear, but the prisoner insists that if favorable he was entitled to the benefit of it, as it would have tended to explain the circumstances under which the difficulty occurred, and rebutted the presumption of malice. This assignment of error raises the question, whether it is competent for a person charged with the crime of murder, to exculpate himself, by proof of declarations which he himself made to another before he committed the homicide, and at a distance of a mile

and a quarter from the place where it was afterwards perpetrated, and in the absence of the person who was slain. To admit such evidence would be to allow a man to prepare a defence for himself, by his own declarations, before he perpetrated the crime which he meditated. The statement of the proposition, is its refutation. The court is of opinion that there is no ground for this assignment of error.

The third assignment of error is the refusal of the court to allow the witness, Price Robinson, to answer the question propounded to him as set out in bill of exceptions No. 4.

It appears from the bill of exceptions that the witness, Price Robinson, was introduced by the commonwealth, who proved by him that about 8 o'clock on the 5th of January, 1880 (which was the night the homicide was committed), the prisoner came to his house, and exhibited a knife and whetted the same on his boot. Upon cross-examination, the witness proved that prisoner came to his house to get him to go home with him. And the prisoner then asked the witness the following question: "When the prisoner came to your house did he not say to you that two men had come to his house that evening from North Carolina and had threatened his life, and that he wanted you to go home with him to protect him?" This question the court refused to allow the witness to answer, and the prisoner excepted.

The commonwealth had proved an act of the prisoner, the whetting of his knife, which taken in connection with the facts set out in the first bill of exceptions, tended to prove that the homicide committed by the plaintiff was perpetrated with premeditation and malice. The question propounded by the prisoner was designed to explain the character and purpose of the act proved by the commonwealth, by the declarations of the prisoner made at the time the act was done, for the purpose of repelling the inference which the jury would be likely to deduce from the act itself unexplained.

The declarations sought to be proved, were made, as the question implies, taken in connection with the facts previously set out in the bill of exceptions, at the time, or immediately in connection with the act. which the commonwealth proved to have been done.

Verbal and written declarations are admissible as constituting a part of the *res gestæ.* As such they are properly admissible when they accompany some act, the nature, object, or motives of which are the subject of inquiry. In such cases, words are receivable as original evidence, on the ground that what is said at the time affords legitimate, if not the best means of ascertaining the character of such equivocal acts as admit of explanation from those indications of the mind which language affords. The language of persons at the time of their doing a particular act, in the same manner as their demeanor or gesture, is more likely to be a true disclosure of what was really passing in their minds, than their subsequent statements as to their intentions, even if such statements would not be excluded on other grounds. They are a part of the *res gestæ.* But to be such the declarations must have been made at the time of the act done. And so they constitute one transaction. (1 Phillips on Evidence, 5 Amer. Edi., with Cowen & Hills and Edward's notes, top p. 150, side p. 185, and note 8v.)

The question propounded by the prisoner called for an answer from the witness, which, if in the affirmative, would have disclosed the declarations, if any, made by the prisoner, at the time he was doing the act, which the commonwealth had proved against him; and which might have tended to prove the character, motive, and purpose of that act. We are clearly of opinion that it was error not to allow the witness to answer that question. Whether the answer would have availed the prisoner, it is not for us to say, but will be for the jury to judge. We can only say that the

prisoner was entitled to the answer  to  go  to  the  jury,  to have such effect as the jury might properly have given to it. And it having been denied him by the court, for that cause the judgment must be reversed.

The fourth assignment of error is the refusal of the court to set aside the verdict and grant the prisoner a new trial. This assignment is upon the first bill of exceptions, which sets out all the evidence, which the court certifies were all the facts proved in the cause, and that the prisoner excepted to the opinion of the court overruling his motion to set aside the verdict and grant him a new trial, upon the ground that the verdict was contrary to the law and evidence.

The court is of opinion that as the case goes back, upon the ground of the exclusion of evidence which ought to have gone to the jury upon the former trial, and the prisoner is to have a new trial, it is proper that they should refrain from comment upon the evidence as it is disclosed in the first bill of exceptions, and from an expression of opinion on the fourth assignment of error, so that the jury may be free to pass upon the evidence submitted to them upon the new trial, uninfluenced and unbiased by the opinion of the court upon the facts as they now appear.

The court is of opinion for the reasons given and for the cause hereinbefore stated to reverse the judgment of the county court of Grayson county, to set aside the verdict, and to grant a new trial, and to remand the cause, with instructions to that court, that if upon said trial, the commonwealth should again introduce the evidence set out in the third bill of exceptions, and the prisoner should again propound the question to the witness set out in said bill of exceptions, that he be allowed and required to answer the same.

Judgment reversed.