# Wytheville.

WASHINGTON SOUTHERN RAILWAY COMPANY V. CHESHIRE.

June 10, 1909.

1. APPEAL AND ERROR—*Trial on Amended Declaration—Defects in Original.*—Where it is apparent that a case was tried on an amended declaration to which there was no demurrer and which stated a good cause of action, questions raised by a demurrer to the original declaration will not be considered in this court.
2. MASTER AND SERVANT—*Safer Way of Doing Work—Duty of Master and Servant, Respectively.*—Where there are two ways to perform work, the one safe and the other not, it is the duty of a servant to adopt the safe way, if he knows of it, or, by the exercise of ordinary care, might know it. It is also the duty of the master to inform the servant of the safe way, and if he was not informed of it and did not know it, and could not have ascertained it by the exercise of ordinary care, and was injured in consequence of doing the work in the only way known to him, and that manner of doing it was not so obviously dangerous that a reasonably prudent man would not have undertaken it, the master is liable.
3. MASTER AND SERVANT—*Risk in Doing Work—Reasonable Care of Servant.*—Although a servant may know that there is danger in doing the work assigned him in a particular way, yet if the danger was not so imminent that a reasonably prudent man would not have attempted it under the direction of his foreman, and the servant used such reasonable care as an ordinarily prudent man would have exercised, and was injured, then the master is liable.
4. RAILROADS—*Operation of Switch at Roundhouse—Fellow-Servant Rule—Provision of Constitution and Statute.*—A servant whose duty it is to turn a turntable of a railroad for all engines coming in and going out of a roundhouse, and to throw the switch for the tracks in whichever way they are going, is engaged in the "physical operation of a switch" within the meaning of the constitution and statute abolishing the fellow-servant rule and qualifying the doctrine of assumed risk as to such an employee of a railroad company.

5. INSTRUCTIONS—*Conforming to Alternative Theories.*—Where the evidence presents two theories of a case, upon one of which the defendant is liable and the other not, it is proper to instruct the jury upon the alternative theories.

6. RAILROADS—*Operating of Turntable in Only Known Way—Instructions.*—In an action by a servant agaist his master to recover for injuries received in the operation of a turntable, an instruction is erroneous which tells the jury that the plaintiff cannot recover if they believe that his injuries were due to the manner in which he attempted to operate the table, when it is manifest from the evidence that he acted under the orders and by the instruction of his superior, and managed the table in the only way known to him.

7. INSTRUCTIONS—*Jury Fully Instructed.*—It is not error to refuse further instructions when the instructions already given fairly and fully submit the case to the jury in all essential particulars.

8. APPEAL AND ERROR—*Assignment of Error—What Not Sufficient.*— A statement in a petition for a writ of error that "without discussing in detail the instructions asked for and refused by the court, it is submitted that they expressed correctly the several propositions stated in them, and that there was evidence supporting or tending to support them," is not a sufficient assignment of error, either under section 3464 of the Code, or Rule II of this court. A petition for a writ of error is in the nature of a pleading, and must state clearly and distinctly the errors relied on to reverse the judgment.

Error to a judgment of the Circuit Court of the City of Alexandria in an action of trespass on the case. Judgment for the plaintiff. Defendant assigns error.

*Affirmed.*

The opinion states the case.

Instruction No. 4 asked for by the defendant was amended by striking out the words in italics. As asked it was as follows:

"It is the duty of the master to exercise ordinary care to furnish its employees reasonably safe machinery and appliances with which to work. The duty is discharged if the em-

ployer exercises ordinary care, although the machinery or appliances may not in fact be safe and (or) free from defects.

"*If the jury believe from the evidence, that the turntable of the defendant, in and about the operation of which the plaintiff claims he sustained the injuries complained of, was of modern pattern, design and construction, that it was a new turntable, having been recently procured by the defendant for use at Potomac yards, Alexandria county, Virginia, that it was purchased from reputable manufacturers, and that the defendant exercised ordinary care in the adoption, selection and purchase of said machine, and that the plaintiff's injuries arose from the fact that the said turn-table was not safe or free from defects or from the manner in which the plaintiff attempted to manage and operate the said turn-table, then their verdict must be for the defendant.*"

*Francis L. Smith,* for the plaintiff in error.

*Norton & Boothe,* for the defendant in error.

WHITTLE, J., delivered the opinion of the court.

It is apparent that this case was tried upon the amended declaration to which there was no demurrer, and which states a good cause of action. Therefore we need not notice the first assignment of error which concerns questions raised by the demurrer to the original declaration. *Virginia Cedar Works* v. *Dalea,* 3 Va. App. 165, *ante,* p. 333, 64 S. E. 41.

The writ of error brings under review the judgment in behalf of Robert M. Cheshire, the defendant in error, against the Washington-Southern Railway Company, the plaintiff in error, in an action to recover damages for personal injuries sustained by him while in the service of the railway company.

The essential facts of the case about which there can be no

dispute—at least, from the standpoint of a demurrer to the evidence—are as follows: The plaintiff was employed by the defendant as night operator of its turntable and switch at the freight yards near the city of Alexandria. He was directed to report for duty to Hammersly, the night round-house foreman, and was placed under his control for instructions and orders. The motive power of the turntable was compressed air; and when the plaintiff had been operating it for a few nights, he attempted to stop the table at one of the engine stalls to bring out the engine, but the lever "hung up," and the machine continued to revolve, whereupon Hammersly, the foreman, jumped down into the pit over which the turntable revolved, and stopped it. Several days later the table again failed to respond to the lever, and Hammersly a second time went in the pit and cut off the air. On the last occasion he ordered the plaintiff to get into the pit with him, and instructed him how to stop the table from that position, at the same time remarking, "If you cannot do it, I will get somebody that will"—"that he was tired having to come out there every time the table ran off." Hammersly testified that he stopped the table three times for the plaintiff.

Shortly after the last occurrence the plaintiff was again unsuccessful in the attempt to control the table with the lever, and jumped into the pit for that purpose, but slipped and was caught in the machinery, receiving the injuries of which he complains.

He had no notice or knowledge of any way of stopping the turntable other than that pointed out to him by Hammersly. It appeared, however, that between the table and round-house there was a stop-cock, by means of which the turntable could be controlled without risk or danger to the operator. Hammersly in his testimony admitted that he had never shown the plaintiff any other way to stop the machine when the lever failed him except to jump into the pit and cut off the air. He also testified that after the accident he saw his mistake and showed his

men the valve near the round-house, and directed them not to go into the pit any more while the turntable was in motion.

The first assignment of error which demands our attention questions the correctness of instructions 2 and 3, given at the instance of the plaintiff, and objects to instruction 4 on the ground that there was no evidence to support it.

By instruction 2 the court told the jury· that where there are two ways for a servant to perform his work, the one safe and the other unsafe, it is his duty to adopt the safe way, if he knows of it, or in the exercise of ordinary care might know of it. Also, that it is the duty of the master to inform the servant of the safe way; and if they believe from the evidence that the plaintiff was not so informed and did not know, and could not have ascertained the safe way of stopping the turntable by means of the stop-cock by the exercise of ordinary care, and that he was doing the work assigned him in the only way known to him, and that the manner of doing it was not so obviously dangerous that a reasonably prudent man would not have undertaken it, he is entitled to recover, unless he was guilty of negligence, other than the failure to use the cut-off, which contributed to the accident.

Instruction 3 told the jury that although they might believe from the evidence that the plaintiff knew there was some danger in jumping into the pit to shut off the valve and stop the turntable, yet if they further believed from the evidence that the danger was not so imminent that a reasonably prudent man would not have attempted it under the direction of his foreman, and that the plaintiff used such reasonable care as an ordinarily prudent man would have exercised and was injured, then he is entitled to recover.

The evidence was ample upon which to base these instructions, and they announce familiar principles of law, which are fully sustained by the decisions of this court. *Norfolk & Western Ry. Co.* v. *Cheatwood's Admx.*, 103 Va. 356, 49 S. E. 489; *Virginia Portland Cement Co.* v. *Luck's Admr.*, 103 Va. 427,

49 S. E. 577; *C. & O. Ry. Co.* v. *Rowsey's Admr.,* 108 Va. 632, 62 S. E. 363.

Instruction 4 declares the duty of the master to use ordinary care to provide a reasonably safe place for the servant in which to perform the work required of him. The instruction was well within the evidence—notably that part of it which involved the failure of the foreman to advise the plaintiff of the presence of the stop-cock, and to inform him of its use.

It is pertinent here to observe that the plaintiff was engaged in the "physical operation of a switch" in addition to operating the turntable as an adjunct thereto, and is consequently expressly included in section 162 of the Constitution of Virginia abolishing the fellow-servant rule and qualifying the doctrine of assumed risk as to such employee of a railroad company, and also of the cognate provisions found in Va. Code 1904, section 1294k.

Hammersly testified that it was the plaintiff's duty to turn the table for all engines coming in and going out of the house, and to throw the switch for the tracks in whichever way they were going. It is clear, therefore, that the plaintiff comes within both the spirit and the letter of the foregoing provisions.

We may treat the next two assignments of error, both of which deal with the defendant's instructions, together. Of the twenty-two instructions asked for by the defendant, the court gave nine, modified two and refused eleven. We are told that the first instruction asked in behalf of the defendant was intended to present to the jury the theory that if the plaintiff slipped and *then* fell into the turn-table pit it was an accident for which the defendant is not liable. But the court modified the instruction by adding the words, "if the jury believe from the evidence that the plaintiff was not ordered into the turn-table pit by his superior."

The evident purpose of the court in modifying the instruction was to present alternative theories of the accident; upon

one of which the defendant would be liable, and upon the other it would not be responsible for the injury.   In this ruling there was no error, both theories having some evidence to sustain them.

The court gave that part of instruction four which dealt with the measure of the master's duty in the matter of supplying the servant with suitable machinery and appliances with which to work, but rejected the latter portion of the instruction which told the jury that if they believed from the evidence that the turntable was of modern pattern, recently purchased from reputable manufacturers, and that the defendant exercised ordinary care in the adoption and selection of the machine; and that the plaintiff's injuries were due to the fact that the turntable was not safe or free from defects, or to the manner in which the plaintiff attempted to operate it, then their verdict must be for the defendant.   The amendment of the instruction was bad, if for no other reason, because it made the plaintiff, unqualifiedly, responsible for the method of operating the turntable, when it is apparent from the evidence that he acted under the orders and by the instructions of his superior, and managed the machine in the only way known to him.

The plaintiff in error, in its petition for the writ of error, says:  "Without at this time discussing in detail the instructions asked on behalf of the defendant and refused by the court, it is submitted that they expressed correctly the several propositions stated in them, and that there was evidence supporting or tending to support them."

We are of opinion that in the instructions given by the court the case in all essential particulars was fairly and fully submitted to the jury.   But even if the court erred in rejecting some of the defendant's instructions, the errors complained of are not sufficiently assigned by the language quoted, either under section 3464, Va. Code, 1904, or Rule II of this court. A petition for a writ of error is said to be in the nature of a pleading and must state clearly and distinctly the errors relied

·on to reverse the judgment.   *Orr* v. *Pennington,* 93 Va. 268, 24 S. E. 928 ; *Hawpe* v. *Bumgardner,* 103, 93, 98, 48 S. E. 554.

The last assignment of error relates to the refusal of the court to set aside the verdict as contrary to the law and the evidence.

Without prolonging this opinion by a discussion of the evidence, we find it quite sufficient to sustain the verdict of the jury.

For the foregoing reasons, the judgment must be affirmed.

*Affirmed.*