## Staunton,

### DEITZ V. WHYTE.

September 22, 1921.

1. ATTACHMENT—*Jurisdiction—Section 2961 of the Code of 1904—Decree for Amount of Debt in Favor of Party Suing out Attachment.*—An attachment was sued out under section 2961 of the Code of 1904, by plaintiff in error, and it was insisted by defendant in error that as the party suing out the attachment had a decree for the amount of his debt upon which he could issue an execution at any time, the trial court had no jurisdiction of the attachment. The affidavit for the attachment stated that the amount of affiant's debt was as shown by a decree in a certain chancery suit pending in the circuit court. The decree was simply referred to as showing the amount due, and no copy of the decree was filed, and no evidence was offered to show that the plaintiff in error could subject the property in any way save by the attachment.

   *Held:* That it could not be presumed from this mere reference that the plaintiff in error had a personal decree against the debtor for the amount of his debt.

2. FRAUDULENT AND VOLUNTARY CONVEYANCES—*Whether Transaction Sale or Mortgage—Question for Jury.*—Where in attachment proceedings a bill of sale of property, taken under the attachment, was attacked as fraudulent, the question whether the transaction was a sale, or whether or not it was fraudulent, where the evidence was conflicting, was for the jury whose verdict cannot be disturbed on appeal, unless plainly wrong, or without evidence to support it.

3. FRAUDULENT AND VOLUNTARY CONVEYANCES—*Recording Acts—Retention of Possession—Transaction in Another State.*—A bill of sale was executed in West Virginia and the property remained in possession of the seller in that State after the execution of the bill of sale. Before the property was removed to Virginia and before an attaching creditor had acquired any right whatever to subject the property to the payment of his debt, it was turned over to the purchaser, and the property was in the possession of the purchaser when brought into Virginia.

*Held:* That the Virginia statute, relative to the recordation of contracts for the sale of personal property (section 2465, Code of 1919), had no application to the transaction.

4. FRAUDULENT AND VOLUNTARY CONVEYANCES—*Retention of Possession—Purchaser Afterwards Retaining Possession.*—Under a *bona fide* sale of chattels, fair in itself, though there is no delivery of possession at the time of sale, yet if the purchaser gets possession of the chattels before the rights of any creditor of the vendor attach, the sale is good against such creditor.

5. APPEAL AND ERROR—*Harmless Error—Exclusion of Testimony Afterwards Admitted.*—At an earlier stage of the examination of a witness, an agent of plaintiff, the trial court excluded the witness' testimony as to certain statements made by him, but later the witness was recalled and was allowed to testify fully on the subject.

*Held:* That the defendant could not have been prejudiced by the exclusion of the testimony at the earlier stage of the witness' examination.

6. DECLARATIONS AND ADMISSIONS—*Agency—Declarations Before and After the Agency—Witnesses—Competency of Agent.*—The declaration of an agent made before the agency began or after its termination, cannot be given in evidence against his principal. The agent is a competent witness and may be put on the stand and allowed to testify as any other witness, but his declarations are not admissible.

7. DECLARATIONS AND ADMISSIONS—*Self-Serving Declarations—Res Gestae.*—Where the ownership of certain mules was in question, defendant in error was allowed to testify relating to the contents of a certain letter which he claimed to have written to the superintendent of the farm where the mules were sent for pasturage, at the time they were so sent. In this letter he claimed to have written, "These are my mules, take good care of them, and I will pay you the cost."

*Held:* That, if, as seemed probable, the letter was delivered at the same time that the mules were delivered, the contents of the letter were not merely self-serving but were explanatory of the act of delivery of the mules, and as such were properly receivable.

8. INSTRUCTIONS—*Assumption of Facts—Agency—Sale or Mortgage—Case at Bar.*—An instruction was to the effect that if plaintiff purchased the mules in controversy in West Virginia, the laws of the State of Virginia relative to the recordation of contracts did not apply so long as the property remained in West Virginia; and that if the jury believed that plaintiff took possession of the mules in West Virginia, and sent them by his

agent H. to Virginia, where they remained until levied upon under an attachment by defendant, then the jury should find for the plaintiff, even though the contract of sale was never recorded in Virginia. It was objected that this instruction assumed that H. was the agent of plaintiff, and that the contract in question was a sale out and out of the mules.

*Held:* That the instruction was not amenable to either of these objections, and when read in connection with other instructions given in the case it fairly presented the case to the jury.

9. ASSIGNMENT OF ERRORS—*Pointing out Errors Complained Of.*— An assignment of error was as follows: "Fifth: Various other errors, in the rulings and judgment of the court, occurring during the trial of the case and which are covered by the various exceptions of the petitioner, taken at the time, all of which clearly appear in the record of this case."

*Held:* That this amounted to no assignment at all and would not be considered.

10. ASSIGNMENT OF ERRORS—*Petition as a Pleading—Pointing Out Error.*—A petition for a writ of error is a pleading and must specifically point out the errors complained of. It is always incumbent on the plaintiff in error to point out in what respect the trial court has committed error to his prejudice.

Error to a judgment of the Circuit Court of Tazewell county in attachment proceedings. Judgment for claimants of property taken under the attachment. Defendant assigns error.

*Affirmed.*

The opinion states the case.

*Sexton & Roberts,* for the plaintiff in error.

*R. O. Crockett,* for the defendant in error.

BURKS, J., delivered the opinion of the court.

In June, 1918, Deitz sued out an attachment against Samuel G. Walker and had the same levied on certain mules and a horse which the plaintiff claimed was the property

of the defendant Walker. The defendant in error, W. W. Whyte, filed a petition in the cause claiming the ownership of the property levied on, and an issue was made up upon this petition and tried by a jury. After a full hearing of the evidence the jury rendered a verdict in favor of Whyte. The trial court refused to set aside this verdict, and to the judgment entered thereon the writ of error in this case was awarded.

The mules and horse had been purchased by Samuel G. Walker & Company in St. Louis in April, 1917, for work on the county roads in West Virginia, where the firm of Samuel G. Walker & Company had a large contract. In May, 1917, Samuel G. Walker came to Mr. Whyte and requested a loan of $3,000, which Mr. Whyte refused to make, but on the contrary told Walker that while he would not make him the loan he would purchase the mules and horse from the firm at $3,000.00. The sale was consummated on May 9, 1917, when a bill of sale for ten mules and one horse was executed and delivered to Whyte. Whyte did not at that time take possession of the mules and horse but left them in the possession of Samuel G. Walker & Company until they could complete the contract on which this stock was then being used. This contract was not completed until about April 1, 1918, when the mules and horse were delivered to H. F. Harman, agent for Mr. Whyte. Whyte had previously sent H. F. Harman to Virginia to engage pasture for this stock in Russell county, and when the contract of Samuel G. Walker & Company aforesaid was completed about April, 1918. Harman, as the agent for Whyte, carried the mules and the horse to Tazewell county and put them to pasture in accordance with the contract previously made therefor. The bill of sale aforesaid was never recorded in either West Virginia or Virginia.

It was earnestly contended by counsel for Deitz that there never was any sale of this property by Walker

& Company to Whyte, and that Whyte had simply loaned to Samuel G. Walker & Company the sum of $3,000, and that the bill of sale was nothing more than a mortgage to secure this loan. It is further contended for Deitz that if there was any sale, the possession was allowed to remain with the sellers and that the bill of sale was void as to Deitz because never recorded. It was also contended on behalf of Deitz that the transaction between Samuel G. Walker & Company and Whyte was fraudulent as to Deitz, and the property was liable to the attachment. All of these contentions of Deitz were earnestly denied by Whyte and there was a full hearing on the merits in the trial court.

[1] The defendant in error, Whyte, moves this court to dismiss the writ of error on the ground that the trial court had no jurisdiction of the attachment. The attachment was sued out under section 2961 of the Code of 1904, and it is insisted by the defendant in error that at the time the attachment was sued out the plaintiff in error had a decree for the amount of his debt against Samuel G. Walker & Company upon which he could issue an execution at any time, and that therefore an attachment under Section 2961 did not lie. Upon the record as it stands the trial court appears to have had jurisdiction of the attachment under Section 2961, and if there was a lack of jurisdiction it was because of the existence of facts not made to appear in the present record. The defendant in error relies upon the statement in the affidavit for the attachment as showing that there had been a decree upon which an execution could issue, but the affidavit to the attachment does not show this. It states the amount of affiant's debt, the time from which it bears interest, and also claims the costs of a certain chancery suit pending in the Circuit Court of Tazewell county, Virginia, in the name of *Deitz* v. *Samuel G. Walker* and refers to the whole "as shown by a decree of said court entered at the May 1918 term thereof." It is not

stated that any decree had been entered therefor, or that any execution could have been issued thereon. The decree is simply referred to as showing the amount due. No copy of the decree is filed, and no evidence was offered to show that Deitz could subject the property in any way save by the attachment. We cannot presume from this mere ref-erence that Deitz had a personal decree against Walker for the amount aforesaid. There may or may not have been such a decree, or a decree may have been rendered and exe-cution thereon suspended, or there may have been other rea-sons showing that Deitz had no right to sue out an execu-tion. At all events, the affidavit and attachment conform to the statute, and the record does not show anything to de-feat the jurisdiction. For these reasons the motion to dismiss the writ of error is overruled.

[2] The first assignment of error is to the action of the court in refusing to set aside the verdict of the jury as contrary to the evidence, or without evidence to support it. The main argument presented in the petition is under this assignment of error. It is earnestly insisted that the trans-action was fraudulent and that the bill of sale was void be-cause not recorded. There are undoubtedly many badges of fraud set forth in the petition and earnestly insisted on. The evidence for the plaintiff and defendant, respectively, is directly in conflict on a number of the most material ques-tions involved. There can be no doubt that if the case had been submitted to the jury on the testimony in behalf of Whyte alone, a verdict in his favor must have been found. Whether the transaction was a sale or a mortgage, or whether or not it was fraudulent, were questions properly submitted to the jury with whose verdict we cannot inter-fere.

[3, 4] The bill of sale was executed in West Virginia and the property remained with the seller only in West Virginia, so that the Virginia statute has no application thereto. Be-

fore the property was removed to Virginia, according to the testimony for Whyte it was turned over to him as purchaser. This occurred before Deitz had acquired any right whatever to subject the property to the payment of his debt. When the property was brought into Virginia it was brought as the property of Whyte. The jury was fully instructed on this subject at the instance of Deitz, and the finding of the jury settled the question that the property was in the possession of Whyte when brought into Virginia. In *Sydnor* v. *Gee,* 4 Leigh (31 Va.) 535, it was held, "If an absolute sale of chattels, fair in itself, be not accompanied and followed by immediate possession, but possession is taken by the vendee before the rights of any creditor of the vendor attaches, the sale is good against the vendor's creditors." In the course of his opinion in that case, Judge Tucker said, at page 549, "It is strongly my impression that failure to deliver possession where there is no real fraud intended does not attach fraud to the transaction forever; and that the subsequent delivery will make it valid and effectual against all creditors whose debts are contracted, and all purchasers whose bargains are made, after such subsequent delivery." See also *Clarke* v. *Ward,* 12 Gratt. (53 Va.) 440. In *Poling* v. *Flanagan,* 41 W. Va. 192, 23 S. E. 685, it was held that "under a *bona fide* sale of chattels, though there is no delivery of possession at the time of sale, yet if the purchaser gets possession of them before an attachment is levied, his title is good against the attachment."

[5] The next assignment of error is the action of the trial court in excluding from the jury the testimony of H. S. Lefler regarding statements made to him by H. F. Harman, agent for Whyte, at the time he made the contract for rent of pasture and at the time the mules and horse were delivered at the pasture. H. S. Lefler was the manager of the farm on which the mules and horse were to be pastured.

It is true that the trial court did at one time exclude the testimony as to this statement. This exclusion was made at an early stage of the examination of the witness, Lefler. The record shows, however, that Lefler was afterwards recalled by defendant's counsel and, in the first question propounded to him, defendant's counsel said: "Mr. Lefler, the court has ruled that you can give your testimony as to what occurred at the time the contract was made for the pasture of the mules and at the time the mules were delivered there between you and Mr. Harman." Counsel then proceeded to examine him on this subject, and was allowed to examine him fully and to bring out everything that had been excluded at the earlier stage of the examination. While he was being examined, the court broke into the examination and propounded to him the following questions: "What all did Howard Harman say the day he brought the mules there—that is what we want to know, and the day he arranged for the pasture?" The witness testified fully on the subject so that the defendant could not have been prejudiced by the exclusion of the testimony at the earlier stage of his examination.

[6] Exception was also taken to the ruling of the trial court excluding certain declarations which had been made by Harman, the agent of Whyte, a week before the horses were brought to Virginia, and several months after they had been there, the first conversation having taken place in West Virginia. Harman had not been appointed the agent of Whyte at the time of the first conversation, and his agency had terminated long before the second conversation. It is well settled that the declaration of an agent made before the agency began or after its termination, cannot be given in evidence against his principal. The agent is a competent witness, and may be put on the stand and allowed to testify as any other witness, but his declarations are not admissible. Huffcut on Agency, sec. 137; *Lake* v. *Tyree,* 90 Va. 719, 721, 19 S. E. 787; *Fisher* v. *White,* 94 Va. 236, 26 S. E.

573; *Hoge* v. *Turner*, 96 Va. 624, 32 S. E. 291. It may be observed in this connection that Harman was put on the stand by the defendant during the progress of the trial, but the defendant never asked him a question on the subject of these various conversations. There was no error, therefore, in excluding the declarations alleged to have been made by this witness.

[7] The next error assigned is the refusal of the trial court to strike out the testimony of Whyte relating to the contents of certain letters he claimed to have written to Lefler, the superintendent of the farm, regarding the ownership of the mules and horse. Whyte testifies that he wrote one letter by mail the day before the mules were sent, and wrote another which he sent by Harman, who carried the mules. The letter sent by mail contained nothing of great importance. In the letter sent by Harman, Whyte testifies that he wrote "these were my mules, and to take good care of them and that I would pay whatever the cost was." Lefler denied that Harman delivered any letter to him at the time the mules were delivered, but did admit that he had received two or three letters from Harman on the subject, but he states that in one of these letters he referred to the mules not as "my mules," but as "our mules," and says that this letter was received some time after the attachment was levied. Whyte testified that the letter sent by Harman was a letter of instructions. If it was delivered at the time he delivered the mules, it constituted part of the *res gestae.* The contract for the pasturage for the mules had been made, but the name of the owner had not been given. Now, the mules are delivered for pasturage and the owner writes: "These are my mules; take good care of them, and I will pay you the cost." This was explanatory of the act of delivery of the mules. Whether the letter was delivered at the same time that the mules were delivered, or sent at a later period was a question for the jury. No

objection was made to the testimony on the ground that no such letter had been delivered, nor that it was parol evidence of the contents of a writing, the original of which was not produced or accounted for, or that no notice had been given to produce the original, nor was any other objection made to the introduction of the testimony. On the contrary, Whyte was examined at length as to these letters, and the addressee was examined to show that no such letter was delivered by Harman at the time the mules were delivered. The bill of exceptions states that, "After all the evidence offered by both the plaintiff and defendant had been heard by the jury, the defendant moved the court to strike from the record and from the consideration of the jury the evidence with reference to any letters claimed to have been written by W. W. Whyte to H. S. Lefler with reference to said mules and horse, for the reason that such letters, if produced, would have been improper testimony in this case if offered by said Whyte, because merely self-serving declarations." The trial court refused to strike out the testimony as requested, and in this there was no error. Whyte had been cross-examined at length as to these letters, Lefler had been examined to contradict him, and no objection had been offered to the testimony until all the evidence on both sides had been heard by the jury, and the objection, when it did come, was merely because the letters, if produced, would be improper because self-serving. If, as seems probable, the letter was delivered at the same time that the mules were delivered, the contents of the letter were not merely self-serving, but were explanatory of the act of delivery of the mules, and as such were properly receivable. *Cluverius* v. *Commonwealth*, 81 Va. 805, 806; *Scott & Boyd* v. *Shelor*, 28 Gratt. (69 Va.) 897; *Crite* v. *Commonwealth*, 1 Va. Dec. 431.

[8] The next assignment of error is to the ruling of the trial court in granting an instruction in behalf of the petitioner. This instruction was as follows:

"The court instructs the jury that if they believe from the evidence that W. W. Whyte, by a written contract of sale, purchased the mules in controversy for a valuable consideration, from Sam G. Walker & Company, such purchase being made in McDowell county, W. Va., and while the said mules were in said McDowell county that the laws of the State of Virginia relative to the recordation of contracts for sale of personal property (as comprised in section No. 2465 of the Code of Virginia), did not apply to such contract of sale so long as the property remained in the State of West Virginia; that if they further believe from the evidence that the said W. W. Whyte took possession of the said mules in McDowell county, W. Va., and sent them by his agent, H. F. Harman, to the Sanders farm, in Tazewell county, Va., and said mules so remained on said farm in Tazewell county, Va., until levied on under the attachment in this case, then the jury shall find for the plaintiff, W. W. Whyte, even though they shall further believe that the said contract of sale was never recorded in Tazewell county, Va."

The objection to this instruction is that it assumes that Howard Harman was the agent of W. W. Whyte, and also that the contract in question was "a sale out and out of the mules and horse." We do not think the instruction is amenable to either of the objections mentioned, and, read in connection with other instructions given in the case, it fairly presented the case to the jury. It may be observed further in this connection that the defendant himself had excepted to the ruling of the court refusing to allow witnesses to testify to certain conversation had with Harman which could only have affected Whyte in the event that Harman was his agent.

[9, 10] The fifth and last assignment of error is:

"Fifth: Various other errors, in the rulings and judgment of the court, occurring during the trial of the case and which are covered by the various exceptions of the pe-

titioner, taken at the time, all of which clearly appear in the record of this case."

This amounts to no assignment at all and will not be considered. A petition for a writ of error is a pleading, and must specifically point out the errors complained of. It is always incumbent on the plaintiff in error to point out in what respect the trial court has committed error to his prejudice. *Lorillard Co.* v. *Clay,* 127 Va. 734, 104 S. E. 384, and cases cited.

We find no error in the judgment of the trial court, and it is accordingly affirmed.

*Affirmed.*