# Staunton.

## CAUDLE PUCKETT v. COMMONWEALTH.

### September 21, 1922.

1. BRIEFS—*Time of Filing—Assignment of Error.*—Where no brief in behalf of accused was filed along with the petition for writ of error, nor, indeed, any brief filed until four days before the oral argument of the case, the brief cannot be considered in aid of general assignments of error.

2. ASSIGNMENT OF ERRORS—*Briefs—Insufficiency of General Assignments.*— General assignments of error as to the refusal of the court to quash the *venire facias;* as to instructions given and refused; as to refusal to set aside the verdict; as to error in overruling defendant's motion in arrest of judgment; as to having the order read each day; as to changing the order, not aided by any brief which could be considered as a part of the petition, are insufficient.

3. ASSIGNMENT OF ERRORS—*Nature of a Pleading—Object of Assignment of Error.*—An assignment of error is in the nature of a pleading, and in the court of last resort it performs the same office as a declaration or complaint in a court of original jurisdiction. The object of the assignment of error is to point out the specific errors claimed to have been committed by the court below, in order to enable the reviewing court and opposing counsel to see on what points plaintiff's counsel intends to ask a reversal of the judgment or decree, and to limit discussion to those points. Counsel should lay his finger on the error.

4. ASSIGNMENT OF ERRORS—*General Assignment of Error—Verdict Contrary to the Evidence or Without Evidence to Support it.*—A general assignment of error that the verdict was contrary to the evidence, against the evidence, and without evidence to support it, is insufficient. It is incumbent upon the petitioner to set out the evidence and point out its insufficiency.

5. INDICTMENT AND INFORMATION—*Allegation of Time of Commission of Offense—Common Law—Statute.*—At common law, the allegation of some specific time for the commission of the offense was essential, but it was regarded as a mere form, unless some special reason rendered it important, and was ordinarily not required to be proved as alleged; and by statute (section 4875 of the Code of 1919) no indictment shall be deemed invalid for omitting to state, or stating imperfectly, the time at which the offense was committed, when time is not the essence of the offense.

6. INDICTMENT AND INFORMATION—*Allegation of Time of Commission of Offense—Arrest of Judgment—Case at Bar.*—In the instant case, it was urged in behalf of the accused that because of a change of punishment made by statute, the date at which the offense was committed was an essential element of the offense, and that the indictment omitting to allege the time of the offense was fatally defective on motion in arrest of judgment.

*Held:* That, while this might have been true, prior to section 4877 of the Code of 1919, providing for the amendment of defective indictments at any time before the defendant pleads, since the enactment of that statute if the defendant does not exercise his constitutional right to be informed of the nature of the cause of the accusation against him, by objecting to the indictment, he must be taken to have waived such right, and it is too late for him afterwards to claim such right by motion in arrest of judgment.

7. INDICTMENT AND INFORMATION—*Amendment of Indictment—Section 4877 of the Code of 1919.*—Section 4877 of the Code of 1919 authorizes, before the general issue is pleaded, any amendment of the indictment which does not change the nature of the offense charged.

8. HOMICIDE—*Evidence Sufficient to Support Second Degree Murder—Cooling Time.*—In the instant case, accused while attending a social gathering was the subject of an unprovoked assault by one of the party. Deceased and others parted accused and his assailant. Accused then ran away saying "I will see you later." Accused went to his home, got a shotgun, returned and lay in wait in the county road, and when deceased and the assailant of accused and others started for home along this road, accused fired on them, killing deceased. After the homicide accused stated that he "would not have done it, if it had not been the way the boys treated me."

*Held:* That there was ample cooling time, and that it could not be said that a verdict of murder in the second degree was not warranted by the evidence.

Error to a judgment of the Circuit Court of Dickenson county.

*Affirmed.*

With the exception of certain allegations touching the action of the trial court on the subject of bail, as to which the assignment of error was abandoned by counsel for the accused upon the oral argument on the appeal, the petition for the writ of error in this case was in the following words and figures, to-wit:

"Your petitioner, Caudle Puckett, represents that in the year 1920, John Henry Deel was killed in Dickenson county, and your petitioner was put under bond to appear at the next term of circuit court of said county; at the next term of said court he appeared, was indicted for the murder of the said John Henry Deel, the case was continued and he entered into a recognizance for his appearance at the next term of said court; that at the next term of said court (July, 1921), after a trial in which he was convicted by a jury of murder in the second degree, he was by final judgment of said court sentenced to confinement in the penitentiary for the term of eight years. * * *

"Your petitioner is advised and represents to your honors that the said judgment is erroneous and that he is aggrieved thereby, in the following particulars, viz.:

## "ASSIGNMENTS OF ERROR.

"1st.   The court erred in refusing to quash the original *venire facias* list and sheriff's return of same; and also the second *venire facias* and return.

"2nd. The court erred in giving each of the thirteen instructions on behalf of the Commonwealth.

"3rd.   The court erred in refusing each of four instructions requested by the defendant.

"4th. The court erred in amending each of five instructions requested on behalf of the defendant.

"5th. The court erred in admitting certain testimony and evidence on behalf of the Commonwealth over the objection of the defendant; and in refusing to strike out certain testimony on motion of the defendant.

"6th. The court erred in refusing to set aside the verdict of the jury and in refusing to grant the defendant a new trial on his motion because the same was contrary

to the law and evidence, against the evidence, and without evidence to support it.

"7th. The court erred in overruling the defendant's motion in arrest of judgment.

"8th. The court erred in not having the order read each day during the trial and signed as required by statute.

"9th. The court erred in changing the order for the twelfth day of July, on the twentieth day of July, especially in the absence of the defendant and out of the court room.

"And your petitioner further represents that the said judgment and proceedings at the trial of said case is in other respects uncertain, informal and erroneous. All of which will appear from the transcript of the record in said cause certified as required by law as well as the judgment therein is herewith exhibited along with this petition and prayed to be considered as a part thereof.

"Your petitioner therefore prays that a writ of error and supersedeas may be awarded him, in order that the said judgment for the cause of error aforesaid before you may be caused to come that the whole matter in the said judgment contained may be reheard, and that the said judgment may be reversed and in error; and your petitioner prays that he may be allowed bail pending the hearing of his case in your honor's court.

"And your petitioner will ever pray, etc."

No brief in behalf of the accused was filed along with the petition for writ of error, nor any brief, indeed, until four days before the oral argument of the case.

The brief of the Attorney-General, filed nine days before the oral argument, makes the point that "the assignments are in general terms and the petitioner has not 'laid his finger' on a single specific error. Therefore, we are in the position of being required to hunt through

the record to ascertain what errors it is contended the lower court made, because no brief has been filed within the rules of this court, or otherwise, in this case by the accused, and we are forced to guess at the complaints of the accused with reference to the actions of the trial court."

*W. A. Daugherty* and *Sutherland & Sutherland*, for the plaintiff in error.

*John R. Saunders, Attorney-General, J. D. Hank, Jr., Assistant Attorney-General*, and *Leon M. Bazile, Second Assistant Attorney-General*, for the Commonwealth.

Sims, J., after making the foregoing statement, delivered the following opinion of the court:

[1, 2] 1. The assignments of error are not aided by any brief which can be considered as a part of the petition; and under a long line of decisions of this court, none of the assignments of error is sufficient. *Orr* v. *Pennington*, 93 Va. 268, 24 S. E. 928; *Atlantic & D. R. Co.* v. *Reiger*, 95 Va. 418, 28 S. E. 590; *Norfolk & W. Ry. Co.* v. *Perrow*, 101 Va. 345, 43 S. E. 614; *Bank* v. *Wm. R. Trigg Co.*, 106 Va. 327, 56 S. E. 158; *Amusement Co.* v. *Pine Beach Co.*, 109 Va. 325, 63 S. E. 1002, 16 Ann. Cas. 1120; *Washington So. Ry. Co.* v. *Cheshire*, 109 Va. 741, 65 S. E. 27; *Worley* v. *Mathieson Alkali Works*, 119 Va. 862, 89 S. E. 880; *Rust* v. *Reid*, 124 Va. 1, 97 S. E. 324; *Lorillard Co.* v. *Clay*, 127 Va. 734, 104 S. E. 384; *Deitz* v. *High*, 131 Va. 7, 109 S. E. 215; *Deitz* v. *Whyte*, 131 Va. 19, 109 S. E. 212, to cite a portion only of the repeated decisions on this subject.

In *Orr* v. *Pennington, supra*, the assignment of error was as follows: "Your petitioner avers that there was

manifest error in dismissing the bill and rendering said judgment   *   *." The assignment is held insufficient, and this is said: "The petition required is in the nature of a pleading and should state the case which the party applying for the appeal wishes to make in the appellate court. It ought to assign clearly and distinctly all the errors relied on for a reversal of the case, so that the opposite party may know what questions are to be raised in the appellate court and not have new questions sprung upon him at or just before the hearing of the same, when there may not be sufficient time or opportunity for meeting them."

In *N. & W. Ry. Co.* v. *Perrow, supra,* the assignment of error was a general statement that the defendant relies upon the refusal of the court to give certain instructions asked for. The court said: "The general statement, that the refusal of the court to give instructions is relied on as error, is not in compliance with section 3464 of the Code, which requires that a petition for an appeal, writ of error or supersedeas shall assign errors."

[3] In *Bank* v. *Trigg, supra,* this is said: "Counsel should lay his finger on the error;" and the following authorities are quoted with approval, namely:

2 Cyc. 980, where this is said: "An assignment of errors is in the nature of a pleading, and in the court of last resort it performs the same office as a declaration or complaint in a court of original jurisdiction. The object of the assignment of error is to point out the specific errors claimed to have been committed by the court below in order to enable the reviewing court and opposing counsel to see on what points plaintiff's counsel intends to ask a reversal of the judgment or decree, and to limit discussion to those points." And

*Clements* v. *Hearne,* 45 Tex. 415, in which this is said: "To require the appellee or the court to hunt through the

record for every conceivable error which the court below may have committed, when none has been pointed out by the party complaining of the judgment, would obviously be unreasonable and oppressive on the party recovering judgment, and most burdensome on this court, unnecessarily impeding the progress of its business; and, by the confusion and uncertainty which it would beget as to questions on which the case was decided in the court below, destroy its character as an appellate tribunal; and by the multiplicity of the questions for discussion tend much more to confusion and error in its own decisions than the correction of errors which may have in fact occurred in the district court."

In *Washington So. Ry. Co.* v. *Cheshire, supra,* and *Rust* v. *Reid, supra,* it is held that a general assignment of error, touching the action of the court in the giving or refusal of instructions, without pointing out the specific errors complained of, does not amount to any assignment of error at all.

[4] In *Lorillard Co.* v. *Clay, supra* (127 Va. at p. 746, 104 S. E. at p. 388), this is said: "To say that the 'evidence in this case did not justify the instructions' is an admission that there was evidence in the cause upon which the trial court based its instructions, but a denial of its sufficiency. The petition should have set out the evidence and pointed out wherein it was insufficient as a basis for the instructions. This court will not undertake this burden. * * * This court cannot declare that the evidence did not justify the instructions without first ascertaining and weighing all the evidence constituting the basis for the instructions, and, as the petitioner is making the charge of insufficiency, it is incumbent on him to set out the evidence and point out its insufficiency." That pronouncement is equally applicable to the assignment in the instant case that the ver-

dict was "contrary to the evidence, against the evidence and without evidence to support it."

Therefore, we might properly dismiss the case without further remarks. But as the liberty of the accused is involved, we have carefully considered all of the questions raised by the assignments of error in the petition when considered as aided by the belated brief and by the oral argument for the accused, and find no merit in any of them; but in view of the insufficiency of the assignments of error we do not feel that we need to set forth specifically the reasons for our conclusions upon any of those questions. We will, however, make the following remarks with respect to the subjects which we will now mention:

[5-7] 2. On the subject of the motion in arrest of judgment which was overruled by the trial court, this will be said:

By statute, section 4879 of the Code, it is provided that "Judgment in any criminal case shall not be arrested or reversed upon any exception or objection, made after a verdict, to the indictment or other accusation, unless it be so defective as to be in violation of the Constitution."

The only objection urged against the validity of the indictment in the instant case is that it fails to allege any date on which the offense charged was committed. The indictment is in the common law form of an indictment for murder. It alleges that the murder was committed "on the . . . . . day of . . . . . . . in the year . . ."

At common law the allegation of some specific time of the commission of the offense was essential, but it was regarded as a mere form, unless some special reason rendered it important, and it was ordinarily not required to be proved as alleged. *Cool's Case*, 94 Va. 799, 26 S. E. 411; *Ailslock's Case*, 3 Gratt. (44 Va.) 650. But by

statute, section 4875 of the Code, it is provided that "No indictment or other accusation shall be quashed or deemed invalid for omitting  *  *  *  to state, or stating imperfectly, the time at which the offense was committed, when time is not of the essence of the offense."

In the instant case, there was no demurrer to the indictment. The testimony for the Commonwealth, admitted in evidence without objection on the part of the accused, showed that the homicide was committed on the 28th of November, 1920. The verdict of the jury found the accused guilty of murder in the second degree and fixed his punishment at eighteen years in the penitentiary. The judgment under review was entered accordingly. At the time the verdict was returned and the judgment was entered the statute (section 4395 of Code 1919) provided that "Murder in the second degree shall be punished by confinement in the penitentiary not less than five nor more than *twenty* years." This statute went into effect January 13, 1920, and changed the punishment for murder in the second degree, which, under section 3664 of Code 1887, was "not less than five years nor more than *eighteen* years." (Italics supplied.) It is urged in behalf of the accused that because of the change of punishment made by the aforesaid subsequent statute for the offense, if committed on or after January 13, 1920, the date at which the offense was committed was an essential element of the offense; and that the indictment was fatally defective on motion in arrest of judgment; and the following authorities are cited to sustain this contention, namely: *Cool's Case*, 94 Va. 799, 26 S. E. 411; *Shiflett's Case*, 114 Va. 876, 77 S. E. 606; 4 Black. Com.  5 Minor's Syn. Cr. & P., 1; 2 Words & Phrases 1739; 2 Bish. Cr. Pr., sec. 499; *Pine* v. *Com.*, 121 Va. 812, 93 S. E. 652; *U. S.* v. *Cruikshank*, 92 U. S. 543, 23 L. Ed. 588; *U. S.* v.

*Mills*, 7 Pet. 142, 8 L. Ed. 636; *U. S.* v. *Cook*, 17 Wall. 174, 21 L. Ed. 538; Bish. New Cr. Proc., secs. 77, 86, 88, 98a, 100a (4), 325; *Rose's Case*, 116 Va. 1023, 82 S. E. 699; 14 R. C. L., pp. 174, 180; Heard's Cr. Pl., pp. 70-1; *Blair's Case*, 122 Va. 798, 94 S. E. 185; 22 Cyc. 319-320; Beal's Cr. Pl., sec. 151, p. 156; *Old's Case*, 18 Gratt. (59 Va.) 930; *Matthews' Case*, 18 Gratt. (59 Va.) 989; *People* v. *Jackson*, 191 N. Y. 293, 84 N. E. 65, 15 L. R. A. (N. S.) 1173, 14 Ann. Cas. 243.

The principle established by these authorities is that an indictment is fatally defective which does not allege the time at which an offense was committed, when time is an essential element, and, hence, of the essence of the offense; and some of these authorities hold that where there are two statutes, either of which may apply to the offense charged, and the one of subsequent date changes the nature of the offense, *or the punishment of the same,* the indictment must, by proper averment, allege the time at which the offense was committed, so as to bring it within the subsequent statute, and so that the court may see the exact character of the offense and the nature and the measure of the punishment to be imposed. See *Cool's Case, supra* (94 Va. 799, 26 S. E. 411), especially relied on for the accused, and the case therein referred to of *State* v. *Wise*, 66 B. C. 120.

We need not stop here to inquire whether a subsequent statute falls within said principle and holding, where, although it changes the punishment, it does not require a certain penalty fixed by the statute to be imposed without discretion by the judgment of the court, but leaves the punishment to be fixed by the jury within certain limits mentioned, so that the rights of the accused may be protected by the instructions given by the court, or the charge delivered by the clerk under our practice, as to the statute applicable to the case. A

more far reaching distinction now to be made concerning the present procedure in this jurisdiction renders that subject immaterial.

The decisions in Virginia, applying the principle referred to and holding that the defect in the indictment mentioned is fatal, even if objected to only by motion in arrest of judgment, were prior to the recent change in our statute law made by section 4877 of the Code of 1919; and essentially and fundamentally, the reason for the holding that such defect could be taken advantage of at any stage of the trial, and by motion in arrest of judgment, was this: The law, as it then stood, provided no means by which the indictment could be amended after its return by the grand jury, so as to satisfy the constitutional provision giving the accused in all criminal prosecutions "the right to demand the cause and nature of his accusation." (Const., sec. 8.) The defect was, therefore, fatal to the validity of the indictment on demurrer, because, as the law then stood, the indictment could not be amended. For the same reason, as the law then stood, the defect was fatal to the validity of the indictment on motion in arrest of judgment. As said in 16 C. J. 1258: "* * the court will determine the validity of objections on a motion in arrest (of judgment) by ascertaining whether they would have prevailed on demurrer, and * * whatever would be fatal under the latter would be fatal under a motion in arrest; * *." Conversely, it must be true that when the law has been so changed that such a defect as that under consideration may be cured by amendment of the indictment by the court, so that the defect is not fatal to the indictment or demurrer thereto, motion in arrest of judgment will not lie for such defect.

It is, of course, still true that where time is of the essence of the offense, the time must be alleged in the in-

dictment, if the accused demands it before he pleads, but, under the aforesaid recent statute, this may be done by amendment of the indictment by the court. Section 4877 of the Code of 1919, in force when the instant case was tried, provides as follows: "At any time before the defendant pleads, a defective indictment for treason or felony may be amended by the court before which the trial is had that does not change the character of the offense charged. * * *." It appears from the Revisors' note to this section that it was intended to and, by fair construction, we think it does authorize, before the general issue is pleaded, any amendment of the indictment which does not change the nature of the offense charged. Thus the accused is given timely and ample opportunity to avail himself of his constitutional right aforesaid to be informed of the nature and cause of the accusation against him. That satisfies such constitutional requirement. If he does not exercise this right when he should, in conformity with the reasonable and orderly procedure provided by the statute, namely, "before he pleads"—meaning before he pleads putting himself upon his trial on the merits—he must be taken to have waived such right and, under the procedure put in force by the statute under consideration, it is too late for him afterwards to claim such right by motion in arrest of judgment. See *Flanary's Case,* 133 Va. 665, 112 S. E. 604.

[8] 3. On the merits of the case we will say this:

The evidence before the jury showed that on the night of November 28, 1920, there was a social gathering at the home of Bob Biers; that among those present were the accused, the deceased, John Henry Deel, Ted Honaker and others; that about nine o'clock an unprovoked assault was made on the accused, who was unarmed at the time, by Ted Honaker, in which, however,

according to the testimony for the Commonwealth, no weapon was used by either; that this resulted in a fight between these two persons, in which they struggled, first on the back porch and then on the ground of the back yard, until they reached the back fence, at which time Ted Honaker was on top of the accused, but neither seemed to be doing the other much injury at that time. At one time during this fight a brother of Ted Honaker started to get into it, but was pulled away by a bystander. Soon after the contestants reached the back fence, the deceased and three or four or five others parted them, taking Ted Honaker behind the house; that thereupon the accused jumped up and ran away, saying just as he started, "Damn you, I am going home now, but I will see you later," or words to that effect; that the accused went a distance of about 250 or 300 yards to his home and got the shot gun with which the homicide was committed—a single-barrel breech-loading gun—returned with the gun, not to the dwelling house of Bob Biers, in or about which Ted Honaker and his companions, the deceased and others, who came with them to the place, then were, but stationed himself by a bush in the county road not far from the Biers house, about fifty-one feet away from the path along which Ted Honaker and companions came to the Biers house, and along which they in all probability would go when they started home; that as a matter of fact Ted Honaker and companions were on the point of leaving for home soon after the accused stationed himself on the wayside as just stated; that the night was very dark; that as Ted Honaker and companions started for home and had gone only about fifty feet from the house, with only two lights carried by them, one a flashlight, carried by the deceased, and the other a carbide light, carried by another of the par-

ties, neither giving sufficient light to enable the accused to identify one individual from another—the deceased who carried a pistol and had been drinking considerably (with the flashlight in his left hand, which was on his side next to the accused, and with his pistol in his right hand, on his side away from the accused, as he walked along the path—the other parties with him all at the same time walking along the same way—fired several shots from his pistol into the ground; that the direction of these shots was not towards the accused, which was apparent to him from the flash of the pistol; that the position of the accused was unknown to the deceased and those with him going along their way (and the jury were well warranted in inferring from all the circumstances that the accused well knew this at the time); that thereupon the accused fired the shot from the gun which killed the deceased; and that the only excuse which the accused gave for the deed was that, when shortly afterwards he came to the home of Biers, on being asked by one of the women present, "What made you do it?" he replied: "I would rather have been killed myself, and would not have done it, if it had not been the way the boys treated me."

The only question in the case, on the merits, which we think admits of serious debate, is whether the evidence showed that the accused was so beside himself with sudden passion, aroused by the provocation of the unprovoked assault upon him by Ted Honaker, that the jury were not warranted in finding that the shooting was done of malice aforethought, which was essential to the crime of which they convicted the accused. On this question we need say only this: The deceased did not assault the accused or take any part in that assault; on the contrary he helped to put an end to that assault by acting the part of a peacemaker. And even

if the assault of Ted Honaker upon the accused could be said to have in any degree warranted the accused in making a subsequent promiscuous attack upon Ted Honaker and his companions (which cannot be conceded), there was ample "cooling time" between the provocation and the killing, and it was for the jury to decide whether, under all of the circumstances, the homicide was committed with the requisite malice to constitute murder in the second degree; and even if we felt that if we had been upon the jury we might have come to a different conclusion upon that subject, it would be outside the province of this court to disturb the verdict on that ground. As a matter of fact, however, we have no feeling of that kind arising from the evidence in this case, as we think that the evidence would have fully warranted the jury in finding a verdict of murder in the first degree, instead of in the second degree.

The case will be affirmed.

*Affirmed.*