𝔖𝔱𝔞𝔲𝔫𝔱𝔬𝔫.

DEITZ V. HIGH.

September 22, 1921.

1. INSTRUCTIONS—*Modification—Harmless Error.*—Defendant, plaintiff in error, assigned as error that the trial court struck out certain words from an instruction offered by him. Plaintiff in error admitted in his petition that the action of the trial court perhaps left the substance of the instruction practically intact, but insisted that he was "clearly entitled to have his entire instruction given to the jury."

  *Held:* That this admission by plaintiff in error demonstrated that the error, if any, was harmless, and not a ground for reversal.

2. SALES—*Retention of Possession—Instructions.*—Upon the question of the validity of a sale as to creditors, the jury were instructed that if they believed that the possession of the property, the subject of the sale, was left with the vendor by the purchaser, the contract of sale was void, as to creditors, until and except from the time that it was duly admitted to record. The words used in the instruction, "that the possession of said property was left with" the grantor, are not the words of the statute (section 5194 of the Code of 1919). The language of the statute is, "When the possession is allowed to remain with the grantor." It is always safer to use the language of the statute where it can be done.

3. SALES—*Retention of Possession—"Left"—Temporary Leaving.*—The word "left," as used in the instruction set forth in the preceding syllabus, might mean temporary leaving which could not be cured by a subsequent transfer of possession, even though possession was thereafter taken before the rights of others attached, whereas where no real fraud is intended, a subsequent delivery would render the sale valid and effectual against all creditors, whose debts were contracted, and all purchasers whose bargains were made after such subsequent delivery.

4. ASSIGNMENT OF ERRORS—*Instructions—Insufficiency of Assignment—Appellate Court will not Search the Record for Error.*—Defendant, plaintiff in error, assigned as error the giving of two instructions on behalf of the plaintiff, conceding that, "While

said instructions may be correct as abstract propositions of law, petitioner submits that they were improperly allowed and given to the jury in this case."

*Held:* That this was not such an assignment of error as would be considered by the Supreme Court of Appeals. If there were any reasons why the instructions were not proper, it was the duty of the party complaining to point them out. It would be unreasonable to expect this court to search the record to ascertain why instructions which are admitted to be correct as abstract propositions of law, were improperly allowed.

5. FRAUDULENT AND VOLUNTARY CONVEYANCES—*Sale of Personal Property—Appeal and Error—Affirmance.*—In the instant case, although the evidence created a strong suspicion that a sale was fraudulent and various *indicia* of fraud were pointed out, the question of fraud or no fraud was fairly and fully presented to the jury, and the jury found that the transaction was not fraudulent in fact.

*Held:* That whatever the Supreme Court of Appeals might think of the weight of the testimony as it appeared in the record, if it was unable to say that the verdict of the jury on this question was without evidence to support it, or was plainly contrary to the evidence, the judgment must be affirmed.

6. FRAUDULENT AND VOLUNTARY CONVEYANCES—*Sales—Retention of Possession—Question for Jury.*—Where the validity of a sale of personal property was attacked because not recorded as provided for by section 5194 of the Code of 1919, whether or not the property was allowed to remain with the vendor after the sale was a question of fact, and the decision of the jury upon such a question fairly submitted to them under a proper instruction, is conclusive, where the Supreme Court of Appeals is unable to say that the verdict of the jury was without evidence to support it, or was plainly contrary to the evidence.

Error to an order of the Circuit Court of Tazewell county in interpleader proceedings. Order for complainant. Defendant assigns error.

*Affirmed.*

The opinion states the case.

*Sexton & Roberts,* for the plaintiff in error.

*R. O. Crockett,* for the defendant in error.

BURKS, J., delivered the opinion of the court.

This is a contest over certain personal property alleged to have been the property of Samuel G. Walker. An execution in favor of Deitz against Walker was levied on the property, and it was claimed by the defendant in error, C. G. High. In an interpleader proceeding instituted by High, the title to the property was tried before a jury, who found in favor of High. Judgment was entered in his favor, and to that judgment a writ of error was awarded.

The property was levied on in the Pocahontas Inn, at Pocahontas, Va., in October and November, 1918. Prior to coming to Pocahontas, Walker and High had been engaged together in the retail liquor business at various points in West Virginia for about twelve years. When prohibition went into effect in that State, they came to Pocahontas together, and Walker purchased the Pocahontas Inn building. The defendant in error, High, testified as to what took place thereafter as follows:

"That a corporation was organized under the name of Pocahontas Inn Company, Incorporated, and it conducted both a hotel and retail liquor business, the retail liquor business being first conducted in the hotel or Pocahontas Inn building, and later in a new brick building erected by Sam G. Walker, adjoining the said Inn building and on the same lot; that he was interested as a stockholder in the Pocahontas Inn Company, Incorporated; that Sam G. Walker was also interested as a stockholder in said Pocahontas Inn Company, Incorporated; that he and Sam G. Walker had charge of the retail liquor business conducted by Poca-

hontas Inn Company Incorporated, and that he, a part of the time, prior to the fire of February, 1915, partly destroying the Pocahontas Inn, had charge of the hotel conducted by Pocahontas Inn Company, Incorporated; that sometime thereafter a new corporation was organized and chartered under the name of Sam G. Walker & Company, Incorporated, of which he was a stockholder, and Sam G. Walker was a stockholder, and of which he and the said Sam G. Walker were in charge; that, thereafter the retail liquor business which had been formerly conducted by Pocahontas Inn Company, Incorporated, was conducted by Sam G. Walker & Company, Incorporated; that during the early part of the year 1915 the Pocahontas Inn building was partly destroyed by fire and that Sam. G. Walker & Company, Incorporated, suffered considerable loss therefrom by reason of the fact that it had large quantities of liquor stored therein; that the said Sam G. Walker by reason of the said loss and the failure to have his insurance adjusted promptly became hard up for money; that the said firm of Sam G. Walker & Company, Incorporated, became involved by reason of its loss by said fire and the failure to have its insurance promptly adjusted and it became necessary for someone to advance to said Sam G. Walker & Company, Incorporated, funds to carry on its business; that witness at that time loaned to said corporation the sum of one thousand dollars ($1,000.00) which was never repaid to him; that after said loan, Sam G. Walker & Company, Incorporated, carried on its retail liquor business until May 1, 1916, and made a profit of about six thousand ($6,000.00) dollars; that Sam G. Walker, who was president of said Company, drew out the said entire profits from the business and made use of them for his own personal uses, thereby using the dividends which belonged to the witness, and the said Sam G. Walker recognizing his personal indebtedness

to the witness, executed to the witness the written contract
of date May 1, 1916, introduced in evidence in this case;
that for some months prior to May 1, 1916, being the date
of such written contract, the property in controversy in
this case had been in the brick building or saloon and pos-
session of Sam G. Walker & Company, Incorporated, and
had been used by such corporation in the conduct of its
business; that on May 1, 1916, the said property was still
in the said brick building or saloon and possession *and* re-
mained there until removed as hereinafter stated; that the
said property and the furniture and fixtures of Sam G.
Walker & Company, Incorporated, which had been used by
said corporation in the conduct of its said business, re-
mained in said building and possession of Sam G. Walker
& Company, Incorporated, for some time after May 1, 1916;
that shortly after May 1, 1916, witness was called to the
bedside of his father, who was very ill, and while away
from Pocahontas someone, whom he understands was Sam
G. Walker, removed the property in controversy in this
case from the said brick building or saloon building into the
building of Pocahontas Inn or hotel building, in which Poca-
hontas Inn Company, Incorporated, was conducting a hotel
business, which hotel building had been repaired after said
fire, such removal being made without the knowledge or con-
sent of the witness; that he understands that said properties
were removed from said brick building or saloon building in
order to change or remodel the interior of same preparatory
to its use as a motion-picture theatre; that the large mirror,
mentioned in said written contract, after its removal from
said saloon building was attached to the partition between
the dining room of said Pocahontas Inn building and sam-
ple room that had been constructed from a large porch
along the side of same; that the iron safe was placed in a
room adjoining the wash room and that the office counter

or cigar case and cash register were placed in the lobby of of the Inn and used in connection with the business of said Inn; that the said Sam G. Walker explained to witness that the reason he placed said mirror there was in order to prevent its being broken; that prohibition went into effect in the town of Pocahontas at midnight on April 30, 1916, after which time said Sam G. Walker & Company, Incorporated, ceased its business of retailing ardent spirits; that at the time said contract was executed he showed same to his attorney, and asked his attorney if said contract would protect him and he replied that it would; that witness soon thereafter went to the city of Roanoke, Virginia, where he entered into a liquor business with Virginia Wine & Liquor Company, of which he was a stockholder, and continued in said business there until prohibition went into effect in Virginia, November 1, 1916; that witness knew that Sam G. Walker was indebted at the time he executed the said writing; that he did not know what the contract was between the defendant, Deitz, and Sam G. Walker; that he knew that defendant had not been paid for work of installing the heat and plumbing in the Pocahontas Inn building after the fire, which work had been completed, or was about complete, at the time said written contract was executed; that he had never told anyone except John Roberts, an attorney, of his said purchase; that on November 22, 1918, said property was advertised for sale under decree of the Circuit Court of Tazewell county, Virginia, in the case of *William F. Deitz v. Sam G. Walker, et als,* and when he heard of such advertisement he appeared at Pocahontas and made claim to the said property; that such advertisement of sale was pursuance of a decree entered in the case of *William F. Deitz v. Sam G. Walker, et als;* that said property was not sold as the property of Sam G. Walker but the sale continued at his request; that prior to the execution of said written con-

tract and while the safe was in the possession and use of Sam G. Walker & Company, Incorporated, witness had possession of the keys to said safe mentioned in said contract, and that after said sale he retained possession of said keys and used said safe in which to store some of his property while the same was in the Pocahontas Inn building, and that no one else ever used said safe because the inside doors of same were locked and the keys held by him; that he had never paid any taxes on said property nor had he ever been charged with any taxes on said property."

The witness also testified that he purchased the property of Samuel G. Walker on May 1, 1916, at which time Walker executed and delivered to him a bill of sale in the following words and figures:

"Know all men by these presents: That I, Sam G. Walker, of Welch, West Va., in consideration of one thousand Dollars ($1,000.00) the receipt of which is hereby acknowledged, do hereby grant, sell, transfer and deliver unto Chas. G. High the following property, to-wit: All office and bar fixtures as used in Stag Bar in brick annex of Pocahontas Inn, Pocahontas, Va., including front and back bar fixtures with mirror, racks and cases. One double-drawer National cash register, one standing desk, one flat-top office table, one Mosler iron safe, one high stool, two office chairs, one check-protector.

"To have and to hold the said goods and chattels unto the said Chas. G. High, his executors, administrators and assigns, to his proper use and benefit forever. And I, the said Sam G. Walker, do avow myself to be the true and lawful owner of said goods and chattels; that I have full power and good right and lawful authority to dispose of said goods and chattels in manner aforesaid; and that I will warrant and defend the same against the lawful claims and demands of all persons whomsoever.

"In witness whereof, I, the said Sam G. Walker, have hereunto set my hand this first day of May, 1916.

"M. C. Smith, witness.          ·          SAM G. WALKER."

We have given the testimony of this witness practically in full because it is mainly upon his testimony that the plaintiff in error relies for reversal. The execution of the contract was also proved by M. C. Smith, the subscribing witness thereto.

On behalf of the defendant, Deitz, it was shown that the property levied on was pointed out as the property of Walker by Mrs. Dupuy, who was in charge of the Pocahontas Inn at the time of the levy; that the claim of High as owner of the property was not made or heard of, so far as the witness knew, until the day first appointed for the sale thereof; that the property was never listed for taxes by High, but that the "personal property in the Pocahontas Inn building for those years (1917 and 1918) was assessed * * * in the name of Samuel G. Walker, the owner of the building."

[1] It is assigned as error that the trial court struck out the words italicized in the following instruction offered by the defendant, Deitz:

"The court instructs the jury that if you believe from the evidence that Sam G. Walker was, prior to the first day of May, 1916, the owner of the property mentioned in the plaintiff's petition, and was in possession thereof as owner, and that he, on the said 1st day of May, 1916, entered into a written contract by which he sold said property to the plaintiff, which contract was signed by him, and if you further believe from the evidence that the possession of said property was left with the said Sam G. Walker by the said purchaser, the plaintiff, then you are further instructed

that said contract of sale was void, as to creditors, until and except from the time that it is duly admitted to record in the county or corporation wherein the property embraced in said contract may be, *and if you believe from the evidence that the contract offered in evidence is not now, or was not of record in Tazewell county at the time the defendant had execution issued and placed in the hands of the sheriff, that then you must find against the plaintiff on the issue joined."*

Plaintiff in error admits in his petition that the "action of the trial court perhaps left the substance of the instruction practically intact," but insists that he was "clearly entitled to have his entire instruction given to the jury." The admission is a demonstration that the error, if any, was harmless, and not a ground for reversal.

[2-3] It may be observed in passing, that the words used in the instruction, "that the possession of said property was *left* with" the grantor, are not the words of the statute. The language of the statute is, "When the possession is *allowed to remain* with the grantor." It is always safer to use the language of the statute where it can be done. "Left," as used in the instruction, may mean temporary leaving which could not be cured by a subsequent transfer of possession, even though possession was thereafter taken before the rights of others attached. In *Deitz* v. *Whyte, post* p. 19, 109 S. E. 212, decided today, we had occasion to quote the language of Judge Tucker in *Sydnor* v. *Gee*, 4 Leigh (31 Va.) 535, 549, as follows: "It is strongly my impression that the failure to deliver possession, where there is no real fraud intended does not attach fraud to the transaction forever; and that a subsequent delivery will make it valid and effectual against all creditors, whose debts are contracted, and all purchasers whose bargains are made, after such subsequent delivery."

[4] The next assignment of error is: "The trial court erred in giving the two instructions to the jury on behalf of the plaintiff, C. G. High, over petitioner's objection, * *."

"While said instructions may be correct as abstract propositions of law, petitioner submits that they were improperly allowed and given to the jury in this case."

This is not such an assignment of error as this court will consider. If there were any reasons why the instructions were not proper, it was the duty of the party complaining to point them out. It would be unreasonable to expect this court to search the record to ascertain why instructions which are admitted to be "correct as abstract propositions of law * * * were improperly allowed." *P. Lorillard & Co.* v. *Clay,* 127 Va. 734, 104 S. E. 384, and cases cited.

[5] It is earnestly insisted that the transaction was actually fraudulent and that the dealings of Walker and High were mere devices to screen the property of Walker from the payment of his honest debts. Undoubtedly, the evidence presents strong suspicions of fraud, and counsel for the plaintiff in error in their able review of the evidence point out various *indicia* of fraud, but the question of fraud or no fraud was fairly and fully presented to the jury, and was one which it was peculiarly their province to decide. It is immaterial what we think of the weight of the testimony as it appears in the printed record. The jury have found that the transaction was not fraudulent in fact and we are unable to say that their verdict on this question is without evidence to support it, or is so plainly contrary to the evidence that it is our duty to set it aside. The law relating to fraud and the presumptions and burden of proof in cases of fraud has been so often stated by this court that it is not necessary to enter upon any detailed discussion thereof. See *Hutcheson* v. *Savings Bank,* 129 Va. 281, 105 S. E. 677;

*Hickman* v. *Trout,* 83 Va. 478, 3 S. E. 131; *Engleby* v. *Harvey,* 93 Va. 445, 25 S. E. 225; *American Net & Twine Co.* v. *Mayo,* 97 Va. 182, 33 S. E. 523; *Flook* v. *Armentrout,* 100 Va. 638, 42 S. E. 686; *Johnson* v. *Lucas,* 103 Va. 36, 48 S. E. 497; *Redwood* v. *Rogers,* 105 Va. 155, 53 S. E. 6; *Shoemaker* v. *Chapman Drug Co.,* 112 Va. 612, 72 S. E. 121.

[6] Finally, it is said that the trial court erred in not setting aside the verdict because, even if not fraudulent in fact, the failure to record the bill of sale rendered it fraudulent as to the plaintiff in error, under the provisions of section 2465 of the Code of 1904, now section 5194, Code 1919. It is conceded that the property in controversy was, prior to the sale, the individual property of Samuel G. Walker, and that if possession was allowed to remain with him after the sale, and until the rights of Deitz had attached thereto, the verdict of the jury is wrong, and must be set aside. Whether or not the property was allowed to remain with Walker after the sale was a question of fact which was fairly submitted to the jury under a proper instruction granted at the request of Deitz, and the finding of the jury on that question was that it was not. The testimony of High is that the Pocahontas Inn and Samuel G. Walker & Company were each corporations in which both Walker and High were stockholders, and that Walker was president of the latter company, but the extent of their holdings of stock, or how far they had control of these corporations does not appear; that the Samuel G. Walker & Company "ceased its business of retailing ardent spirits" on April 30, 1916, but not that it ceased to exist or to do any other business; and that the property in controversy was from time to time, at and after the sale, in the possession of one or the other of the two corporations aforesaid. There is no direct evidence that Walker, individually, at any time, either at or after the sale, had possession of said property. There are circumstances

from which the jury might have inferred possession or control by Walker, but the jury did not take that view, and in the face of the testimony hereinbefore recited, we are unable to say that the verdict of the jury on this question is either without evidence to support it, or is plainly contrary to the evidence.

We find no reversible error in the judgment of the circuit court, and the same is therefore affirmed.

*Affirmed.*