# Richmond

## NATIONAL MECHANICS BANK V. SCHMELZ NATIONAL BANK.

### March 15, 1923.

1. APPEAL AND ERROR— *Petition for Writ of Error—Assignment of Error.*— A petition for a writ of error is in the nature of a pleading, and must state clearly and distinctly the errors relied on to reverse the judgment. Counsel should lay his finger on the error.

2. BILLS, NOTES AND CHECKS—*Certified Check—Bona Fide Holder—Holder in Due Course—Case at Bar.*—In the instant case, an action upon a certified check, it appeared that the check was made payable to the order of an army officer and deposited by the drawer to guarantee ·the faithful performance of a government contract. The check was returned to the drawer by the government after the performance of the contract, but was not endorsed by the army officer. The check was presented for payment to defendant bank, upon which it was drawn, by plaintiff, unendorsed by the army officer and was returned by defendant bank "For endorsement" without any notice of indebtedness due defendant bank by the drawer. The endorsement of the army officer was subsequently procured.

   *Held:* That plaintiff was a *bona fide* holder of the check for value and without notice of equities or set-offs between any of the parties, and on the date that the army officer actually endorsed the check plaintiff became a holder in due course, without such notice, and such equities or set-offs could not be afterwards asserted against it.

3. BILLS, NOTES AND CHECKS—*Holder in Due Coirse.*—Where a holder of a check has no knowledge of defenses that would be good against prior holders, and is an innocent purchaser for value, he is a holder in due course.

4. BILLS, NOTES AND CHECKS—*Certified Check—Section 5611 of the Code of 1919—Holder in Due Course—Transfer without Endorsement—Case at Bar.*—Section 5611 of the Code of 1919 provides that the transfer of a negotiable instrument for value without endorsement vests in the transferee such title as the transferor had, and the transferee acquires the right to have the endorsement of the transferor. But for the purpose of determining whether the transferee is a holder in

due course the negotiation takes effect as of the time when the endorsement was actually made.

*Held:* That, in the instant case, since plaintiff bank had no notice of any infirmity in the check, or any equities or set-offs between the parties, at the time the check was actually endorsed by the payee, the contention that the bank was not a holder in due course on and after the date of the endorsement was without merit.

5. BILLS, NOTES AND CHECKS—*Certified Check—Unauthorized Endorsement—Suspicious Circumstances—Fraud—Case at Bar.*—In the instant case a certified check was deposited to guarantee the performance of a government contract. Upon the performance of the contract it was returned to the drawer unendorsed, and upon presentation for payment the bank returned it to the holder for endorsement. The endorsement of the payee was secured, but the check was again returned by defendant bank, the reason assigned being, "Endorsement not authorized." Proper endorsement by the payee was finally obtained. There was nothing in the record to suggest that the name of the payee was first placed on the check by some one who did not believe it would meet with his approval, or that the holder was in any way a party to the transaction.

*Held:* That the holder's right to recover upon the check could not be defeated even by suspicious circumstances, in the absence of proof amounting to fraud on its part. Moreover, the payee having subsequently endorsed the check, the previous placing of his name thereon did not prejudice the rights of any of the parties.

6. STATUTES—*Construction—All Parts of a Statute Read Together.*—In construing one part of a statute resort should be had to every other part.

7. STATUTES—*Construction—All Parts of a Statute Read Together—Bills, Notes and Checks—Sections 5615 and 5754 of the Code of 1919—Holder in Due Course.*—In construing section 5615 of the Code of 1919, providing that when an instrument is negotiated an unreasonable time after its issue; the holder shall not be deemed a holder in due course, section 5754 of the Code of 1919, providing that in determining what is a reasonable time regard is to be had to the nature of the instrument, the usage of trade, and the facts of the particular case, must be taken into consideration.

8. BILLS, NOTES AND CHECKS—*Certified Check—Negotiation Within a Reasonable Time.*—A certified check was deposited to guarantee the performance of a government contract, it being understood between the original parties that it would be held pending the performance of the contract. The check was negotiated immediately after the performance of the contract.

*Held:* That it could not be said that the check was negotiated an unreasonable time after its issue.

9. BILLS, NOTES AND CHECKS—*Certified Check—Nature of the Check.*—A certified check stands on a different footing from an ordinary check, as appears from section 5749 of the Code of 1919, which provides that where a check is certified by the bank on which it is drawn the certificate is equivalent to an acceptance, and the check should be charged to the drawer's account; and under section 5751, Code of 1919, while an ordinary check does not operate as an assignment of any part of the funds to the credit of the drawer, a certified check does.

10. BILLS, NOTES AND CHECKS—*Certified Check—General Nature—Rights of Holder—Delay in Presentation.*—When a bank certifies a check it obligates itself, without condition, to hold sufficient funds of the drawer to cover the check whenever it is presented for payment. The holder of the check is placed on the same footing and has the name rights as a depositor, and the bank cannot complain of any delay within the statute of limitations, as it is benefited by such delay.

11. BILLS, NOTES AND CHECKS—*Certified Check—Forged Check.*—Even though a check is forged, if the drawee bank certified it, it is bound to pay it when presented by a *bona fide* holder on the principle that as between two innocent parties the loss must fall on the one by whom it was made possible.

12. BILLS, NOTES AND CHECKS—*Certified Check—Operation.*—The moment a check is certified the money to meet it is by operation of law assigned to and placed to the credit of the holder of the check, and in fact charged against the drawer thereof. The money thus transferred is beyond the control of the drawer and his creditors, and no equities that existed between the bank and the drawer could be set off as against the drawer; and, *a fortiori*, they could not be set off as against a holder in due course.

13. APPEAL AND ERROR—*Error in Granting or Refusing Instructions—Evidence Admitting Only one Verdict.*—When a case is fairly tried by an impartial jury, and upon the evidence no other proper verdict could have been rendered, or the verdict is amply supported by the evidence, the rulings of the court, in granting and refusing instructions, are immaterial, and will not be considered.

Error to a judgment of the Circuit Court of the city of Newport News, in a proceeding by motion for a judgment for money. Judgment for plaintiff. Defendant assigns error.

*Affirmed.*

The opinion states the case.

*W. C. Stuart* and *E. A. Bilisoly,* for the plaintiff in error.

*J. Winston Read,* for the defendant in error.

WEST, J., delivered the opinion of the court.

In 1919, Virginia Salvage Company entered into a contract with the United States Government for the purchase of certain firewood at Camp Eustis.   The Government required the company to deposit a certified check for one thousand dollars as a guaranty that it would faithfully perform the contract on its part.   This check, dated December 6, 1919, signed by Virginia Salvage Company, drawn on the National Mechanics Bank of Newport News, Virginia, payable to the order of Lieutenant Colonel F. M. Hinkle, for the sum of one thousand dollars, was duly certified by the cashier of said bank on December 6, 1919, and delivered by the drawer to Col. Hinkle.

The Virginia Salvage Company having in all respects fully performed its contract, the certified check was returned unendorsed on May 22, 1920, by Col. Francis H. Lincoln, successor to Colonel F. M. Hinkle, as Army Supply Officer at Camp Eustis.

On May 22, 1920, this check was deposited by the Newport News Lumber Yards, Inc., in the Schmelz National Bank, which paid face value for it.   While not endorsed by Colonel Hinkle, it was endorsed by Virginia Salvage Company and Newport News Lumber Yards, Inc.   The Schmelz National Bank presented said check to the National Mechanics Bank through the clearing house of the banks of Newport News, and it was returned unpaid, "For endorsement."

At the time this check was first presented and at each subsequent presentation Virginia Salvage Company was indebted to National Mechanics Bank in a sum far in excess of $1,000.00.

The return of the check was brought to the attention of the officers of the Salvage Company, and the check was later returned to the Schmelz bank with the name of Colonel Hinkle thereon, but it was afterwards ascertained that this was not his signature, and when the check was presented the second time, payment was again refused. The Schmelz National Bank then requested the Salvage Company to do what was necessary to secure the endorsement of Colonel Hinkle.

The endorsement of Colonel Hinkle was secured in due course and with reasonable promptness and the check again presented to the National Mechanics Bank for payment and payment was again refused, the only reason assigned being, "Endorsement not authorized." Prior to the trial of the case the only reason given by the National Mechanics Bank for the non-payment of the check was that the proper endorsement of Colonel Hinkle had not been secured. The Schmelz National Bank had no notice of the alleged indebtedness of the Virginia Salvage Company to the National Mechanics Bank until the trial of this case. This action was brought by the Schmelz National Bank upon the certified check aforesaid. The defendant, National Mechanics Bank, pleaded the general issue and filed its six several special pleas in writing, the substance of its defense being that the Virginia Salvage Company, the drawer of the check, was indebted to it in a sum largely in excess of the one thousand dollars, which should be allowed it as an offset against the plaintiff's claim. Upon the issues, a jury heard the evidence and returned a verdict in favor of the plaintiff in the sum of $1,000.00.

This verdict was sustained by the judgment of the trial court to which this writ of error was awarded.

The plaintiff moves to dismiss this writ of error for the reason that the petition does not comply with section 6346 of the Code.

[1] Several of the errors relied on in the petition are insufficiently assigned. A petition for a writ of error is in the nature of a *pleading* and must state clearly and distinctly the errors relied on to reverse the judgment. Counsel should *lay his* finger on the error. *A. & D. Ry. Co.* v. *Reiger*, 95 Va. 418, 28 S. E. 590; *N. & W. Ry. Co.* v. *Perrow*, 101 Va. 345, 43 S. E. 614; *Amusement Co.* v. *Pine Beach Co.*, 109 Va. 325, 63 S. E. 1002, 16 Ann. Cas. 1120; *Bank* v. *Trigg Co.*, 106 Va. 327, 56 S. E. 158; *Puckett* v. *Commonwealth*, 134 Va. 574, 113 S. E. 853; *Deitz* v. *High*, 131 Va. 7, 109 S. E. 215.

We consider it unnecessary to point out the defective assignments of error in detail, since in our view we can properly dispose of the case under the assignment which challenges the action of the court in refusing to set aside the verdict of the jury as contrary to the law and the evidence.

[2] There was nothing peculiar or unusual in the manner of securing Colonel Hinkle's endorsement. The Schmelz Bank was a *bona fide* holder of the check for value and without notice of equities or set-offs between any of the parties, and on June 7, 1920, the date Colonel Hinkle actually endorsed the check, became a holder in due course, without such notice, and such equities or set-offs cannot be afterwards asserted against it.

[3] Where a holder of a check has no knowledge of defenses that would be good against prior holders, and is an innocent purchaser for value, he is a holder in due course. *Benedict* v. *Kress*, 97 App. Div. 65, 89 N. Y. Supp. 607.

[4] Section 5611 of the Code provides as follows: "Where the holder of an instrument payable to his order transfers it for value without endorsing it, the transfer vests in the transferee such title as the transferor had therein, and the transferee acquires, in addition, the right to have the endorsement of the transferor. But for the purpose of determining whether the transferee is a holder in due course, the negotiation takes effect as of the time when the endorsement is actually made."

Since the Schmelz Bank had *no notice* of any infirmity in the check, or any equities or set-offs between the parties, at the time Colonel Hinkle actually endorsed it, the contention that said bank was not a holder in due course on and after that date is without merit. There is nothing in section 5611, *supra*, or in the case of *Goshen National Bank* v. *Bingham*, 118 N. Y. 349, 23 N. E. 180, 7 L. R. A. 595, 16 Am. St. Rep. 765, so strongly relied on by the Mechanics Bank, in conflict with these views. The New York court simply holds that the subsequent endorsement, made *after notice* to the holder of the defenses which the bank would have had against the payee, does not relate back to the original delivery of the paper, so as to destroy the intervening rights and remedies of a third party.

[5] We find nothing in the record to sustain the suggestion that the name of Colonel Hinkle was first placed on the check by some one who did not believe it would meet with his approval, or that the Schmelz Bank was in any way a party to the transaction. Its right to recover could not be defeated even by suspicious circumstances, in the absence of proof of facts amounting to fraud on its part. *Fleshman* v. *Bibb*, 118 Va. 582, 88 S. E. 64.

Besides, Colonel Hinkle having subsequently endorsed the check, it is manifest that the placing of his

name thereon did not prejudice the rights of any of the parties.

Section 5615, Code of 1919, reads as follows: "Where an instrument payable on demand, other than bank notes and certificates of deposit, is negotiated an unreasonable length of time after its issue, the holder is not deemed a holder in due course."

[6, 7] In construing one part of a statute resort should be had to every other part. In construing section 5615, *supra,* we should do so in the light of section 5754, which is as follows: "In determining what is a 'reasonable time' or an 'unreasonable time,' regard is to be had to the nature of the instrument, the usage of trade or business (if any) with respect to such instruments, and the facts of the particular case."

[8, 9] The check being a certified check, it being understood by the original parties that it would be held pending the performance of the wood contract, aforesaid, and being negotiated immediately after the performance of said contract, it cannot be said that the check was negotiated an unreasonable length of time after its issue.

A certified check stands on a different footing from any ordinary check, as will appear from section 5749 of the Code, which reads as follows: "Where a check is certified by the bank on which it is drawn, the certificate is equivalent to an acceptance, and the check shall be charged to the drawer's account.

Section 5751 of the Code is in these words: "A check of itself does not operate as an assignment of any part of the funds to the credit of the drawer with the bank, and the bank is not liable to the holder unless and until it accepts or certifies the check.

[10] When a bank certifies a check it obligates itself, without condition, to hold sufficient funds of the drawer

to cover the check whenever it is presented for payment. The holder of the check is placed on the same footing and has the same rights as a depositor.

The bank cannot complain of any delay within the statute of limitations, as it is benefited by such delay.

The law applicable to certified checks, as laid down by the author, may be found in 2 Daniel an Negotiable Instruments, secs. 1603, 1605, 1607-a, as follows:

Sec. 1603.  "Let us consider more at length the effect of the certification of checks.   In the first place, the bank becomes at once the principal debtor.   When the holder presents the check to the bank, the latter can only respond to the demand for payment by making payment.   But if it be agreed to between them, the check is certified to be 'good;' and, thus, in contemplation and by operation of law, it is the same as if the funds had been actually paid out by the bank to the holder, by him redeposited to his own credit, and a certificate of deposit issued to him therefor.   In other words, a certified check is a shorthand certificate of deposit in favor of the holder, and payable to him, or to him or order, or to bearer, according to its terms.

"Thus the bank ceases to be the debtor of the original depositor, and becomes the debtor of the holder of the check, who may demand the amount, and sue the bank for its recovery at any time even after the lapse of many years.   It will be too late after the bank has certified the check for the drawer to revoke it, and the bank will be bound to pay it though notified by the drawer not to do so.   It will also be too late for the bank to say that the check was forged, and was not in fact the drawer's, unless it be still in the hands of one who was guilty of the forgery, or had knowledge of or complicity in it, for it has conceded its genuineness, and indeed asserted it by certification.   Nor can it say that there were in fact

no funds of the drawer to meet the check, for its certificate is an assurance that there were such funds, and that it will apply them to that purpose. These doctrines are now universally settled. * * *"

Sec. 1605: "In the third place, the check when certified circulates as the representative of so much cash in bank, payable whenever demanded to the holder. It is then like cash, but still it is not the same as cash, for *'nullum simile est idem.'* Frequently a depositor procures his own check to be certified before he offers it in payment. In such cases it does not lose its character as a check in any particular—it only has the additional credit imparted to it by the certificate."

Sec. 1607-a. "Sometimes a check payable to order is certified without the indorsement of the payee being upon it, and when it is already in the hands of a third darty. In such cases it is understood that the proper indorsement will be obtained before the amount is withdrawn, and that the amount will be held by the bank to meet it. But if in fact the holder be the assignee by delivery of the check for a valid consideration and entitled to receive the money, although not an indorser, the bank, it has been held, would be protected in paying him, where the check was drawn for accommodation."

In *Merchants Bank* v. *State Bank*, 10 Wall. 648, 19 L. Ed. 1008, Justice Swayne, discussing the certification of checks, and speaking for the court, says: "It is an undertaking that the check is good then, and shall continue good, and this agreement is as binding on the bank as its notes of circulation, a certificate of deposit payable to the order of the depositor, or any obligation it can assume. The object of certifying a check, as regards both parties, is to enable the holder to use it as money."

[11] Even though a check is forged, if the drawee bank certified it, it is bound to pay it when presented by a *bona fide* holder on the principle that as between two innocent parties the loss must fall on the one by whom it was made possible.    10 Corpus Juris, page 710, section 440.

[12] If there be virtue in the law, it is clear that the moment the check was certified, the money to meet it was by operation of law assigned to and placed to the credit of the holder of the check, and in fact charged against the drawer thereof.    The money thus transferred was beyond the control of the drawer and its creditors and no equities that existed between the National Mechanics Bank, and the Virginia Salvage Company, the drawer, could be set off as against said company; and, *a fortiori*, they could not be set off as against the plaintiff.

To sustain the contention of the plaintiff in error that the drawer of a certified check can, by getting in debt to the bank, defeat the right of the *bona fide* holder for value to recover against the bank the amount for which the check is drawn would be to administer a severe blow to the commerce and business of the country. Under such a ruling, the business world would be "deprived of the opportunity of passing large sums of money from hand to hand without risk or delay."

[13] The case was fairly tried by an impartial jury, and the verdict in favor of the plaintiff is amply supported by the evidence.    In fact, upon the evidence no other proper verdict could have been rendered.    This being true, the rulings of the court, in granting and refusing instructions, are immaterial, and will not be considered.

The judgment complained of is plainly right and must be affirmed.

*Affirmed.*