418

THOMAS A. COOPER, BANK COMMISSIONER

*vs.*

AUGUSTA TRUST COMPANY.

THOMAS A. COOPER, BANK COMMISSIONER

*vs.*

STATE TRUST COMPANY.

Kennebec.      Opinion, June 4, 1935.

*John E. Wilson,*
*Charles P. Nelson,* for appellant.
*John E. Nelson,*
*James B. Perkins,* for Augusta Trust Company.
*Emery O. Beane,* for State Trust Company.

SITTING: PATTANGALL, C. J., DUNN, STURGIS, BARNES, THAXTER, JJ.

THAXTER, J. These appeals concern the validity of certain claims alleged to be preferred filed by John C. Arnold, United States Postmaster at Augusta, against the Augusta Trust Company and the State Trust Company, two banks in Augusta in process of liquidation by receivers. A hearing was held before the commissioners appointed to determine such claims, who disallowed them as priorities. From decrees of the sitting Justice confirming such report these appeals were taken.

The claims involve the status of three certified checks, one on the Augusta Trust Company for $500 dated May 28, 1928, drawn by W. H. Gannett, Publisher, Incorporated, the second on the State Trust Company for $750 dated June 12, 1928, drawn by Needlecraft Publishing Co., the third on the State Trust Company for $500, dated June 12, 1928, drawn by The Vickery & Hill Publishing Company. All three checks were made payable to John C. Arnold, P.M.

All three drawers were publishing houses in Augusta which sent daily large amounts of matter through the mail. The postal regulations provide that credit for postage shall not be given, but permit postmasters to receive from publishers a deposit of money in advance sufficient to pay for more than a single mailing. It is provided that such deposit shall be charged with the proper amount of each mailing, and if the amount on hand is not sufficient at any time to cover the full postage due, the excess of mail matter shall be held until an additional deposit is made. Postal Laws and Regulations 1924 edition revised to 1928, Sec. 415 (a); Postal Laws and Regulations of 1932, Sec. 541 (4). The checks in question were given in place of the money prescribed by such regulation, and at the re-

quest of the postmaster were certified by the banks on which they were drawn. It was the practice for the publishers to pay for postage in cash on the day following the mailing, and the checks in question were held by the postmaster over a five year period to the time of the closing of the banks as security for such payments. Conservators for the banks on which the checks were drawn were appointed July 3, 1933. The postage for that day was subsequently paid in cash, and thereafter a new arrangement was made, under the terms of which the publishers, in strict compliance with the postal regulations, deposited money to cover future mailings. Immediately after the closing of the banks the postmaster, instead of resorting to his security, received from the publishers the cash to meet all amounts due him, and at the hearing he testified that he had no interest in the payment of the checks and that any money which he might receive on them would be returned to the drawers.

The petitioner bases his claim on Section 191, Title 31, U. S. Code Ann. which reads as follows:

"SECTION 191. PRIORITY ESTABLISHED, Whenever any person indebted to the United States is insolvent, or whenever the estate of any deceased debtor, in the hands of the executors or administrators, is insufficient to pay all the debts due from the deceased, the debts due to the United States shall be first satisfied; and the priority established shall extend as well to cases in which a debtor, not having sufficient property to pay all his debts, makes a voluntary assignment thereof, or in which the estate and effects of an absconding, concealed, or absent debtor are attached by process of law, as to cases in which an act of bankruptcy is committed."

The petitioner contends that the banks are insolvent, that they are "indebted to the United States" within the meaning of the statute, and that accordingly the claims are entitled to priority. He relies on the well established rule that by the certification of a check a bank becomes a debtor to the holder thereof. 5 R. C. L., 523; *National Mechanics Bank* v. *Schmelz National Bank*, 136 Va., 33, 116 S. E., 380; *Merchants National Bank of Boston* v. *The State National Bank of Boston*, 10 Wall., 604. Conceding the soundness of such contention, the result claimed by the peti-

tioner does not necessarily follow. We are concerned not so much with the relation between the bank and the United States as between the United States and the drawers of these checks.

It is the duty of the court to apply the statute giving the government priority in such manner as to carry out its obvious purpose. It was enacted for the general good, that debts due the public should be paid, and it is not to receive a narrow interpretation. *The United States* v. *The State Bank of North Carolina*, 6 Pet., 29. As was well said by the sitting Justice, we must look beneath the surface of this transaction to its real substance.

The postmaster held these checks as security. It was an arrangement assented to by the post office inspectors, not in strict accord, it is true, with the postal regulations which require that money shall be deposited in advance to pay the charge for a mailing, but to protect the postmaster from loss by reason of his failure to have on hand the requisite amount of cash. Until the postmaster should claim a default on the part of the publishing houses for failure to reimburse him for sums owed, the beneficial interest in these checks was in the respective drawers of them. There never was any such default; and on the making of the new arrangement by which the drawers of the checks in strict compliance with the regulations substituted money for them, the petitioner became a purely passive trustee or custodian, whose sole duty was to return the checks to those from whom he had received them. He will turn over to the drawers whatever money he may recover, and the effect of giving to him a priority in this instance would be not to secure payment in full of a debt owed to the United States, but to give to certain general creditors of these banks a preference which they would not otherwise receive.

This case is fundamentally different from *Bramwell* v. *United States Fidelity & Guaranty Co.*, 299 Fed., 705, affirmed 269 U. S., 483, in which the government, as trustee for the Klamath Indians, was held entitled to priority, on a deposit in an insolvent bank. The United States in that case was something more than a mere passive trustee, and by reason of a treaty owed certain obligations to the Indians.

The sitting Justice applied the statute in question to the facts before him in accordance with its manifest purpose. To have ruled

otherwise would have been to have disregarded its essence for a servile observance of its form.

*Appeals dismissed.*
*Decrees below affirmed.*